375 P.2d 333

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Christian BENAVIDEZ, Defendant-Appellant.**

No. 6953.

Supreme Court of New Mexico.

Oct. 16, 1962.

David F. Cargo, Albuquerque, for appellant.

Earl E. Hartley, Atty. Gen., Thomas A. Donnelly, Shirley C. Zabel, Asst. Attys. Gen., Santa Fe, for appellee.

FRED J. FEDERICI, District Judge.

This is an appeal from a conviction and sentence based upon an information charging the defendant with the unlawful possession of a narcotic drug, to-wit, marijuana, under Section 54–7–13, N.M.S.A.1953, the information alleging further that the defendant was not a person or agency authorized by law to so possess narcotic drugs. Said section provides as follows:

"*Whoever*, not being a manufacturer, wholesaler, physician, veterinarian, dentist, nurse acting under the direction of a physician, or an employee of a hospital or laboratory acting under the direction of its superintendent or official in immediate charge, or a common carrier or messenger when transporting *any drug mentioned herein* between parties hereinbefore mentioned in the same package in which the drug was delivered to him for transportation, *is found in possession thereof,* except by reason of an order or prescription lawfully and properly issued *shall be punished as hereinafter provided.*" (Emphasis ours)

This section of law was originally Section 13 of Chapter 145, Laws of 1935, being a general act relating to Narcotic Drugs and providing penalties for violation of the act, which section was amended by Chapter 25, Laws of 1953, the effect of which amendment was merely to increase the penalty for violation of the section. Otherwise, there was no other amendment pertinent to this action.

Section 2(15) of the original act (Chapter 145, Laws of 1935) defined "Narcotic Drugs" as follows:

" 'Narcotic drugs' means coca leaves and opium and every substance neither chemically nor physically distinguishable from them."

It will be noted that the definition did not then include cannabis. Section 2(14) of the same act defined "cannabis" as follows:

" 'Cannabis' includes the following substances under whatever names they may be designated: (a) The dried flowering or fruiting tops of the pistillate plant cannabis sativa L., from which the resin has not been extracted, (b) the resin extracted from such tops, and (c) every compound, manufacture, salt, derivative, mixture, or preparation of such resin, or of such tops from which the resin has not been extracted."

It will be noted that the original Section 2(14) did not mention "mature stalks" of the plant, nor does it use the word marijuana as such.

This Section 2 has been amended by the legislature several times. So far as is material to this action the following amendments are noted:

Section 2(15) was amended by Chapter 70, Laws of 1937 to read as follows:

" 'Narcotic Drugs' means coca leaves, opium, *and cannabis,* and every substance neither chemically nor physically distinguishable from them."

It will be noted that the words "and cannabis" were added to the definition of Narcotic Drugs.

Section 2(14) was amended by Chapter 96, Laws of 1939, so as to re-define cannabis as follows:

" 'Cannabis' includes *all parts of the plant* cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; *but shall not include the mature stalks of such plant,* fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such nature [mature] stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination." (Emphasis ours)

It will be noted that the 1939 amendment excluded from the definition "mature stalks" of the plant.

Chapter 59, Laws of 1941 re-amended Section 2(14) by eliminating some language not pertinent to this action and correcting the spelling of the word "mature" at one point.

Chapter 141, Laws of 1957 re-amended said Section 2 but no changes were made in the definition of Narcotic Drugs or Cannabis.

Consequently, the language of said Section 2 defining certain terms, by successive amendments now appears as Section 54–7–2, New Mexico Statutes Annotated 1953 Comp., and Narcotic Drugs and Cannabis

are defined, insofar as a prosecution under Section 54–7–13 is concerned, as follows:

Section 54–7–2. Definitions.

"(14) 'Cannabis' includes *all parts of the plant cannabis* sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; *but shall not include the mature stalks of such plant,* fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake. (Emphasis ours)

"(15) 'Narcotic drugs' means coca leaves, opium, and cannabis, and every substance neither chemically nor physically distinguishable from them."

As originally enacted, Section 2, supra, of the general act (Chapter 145, Laws of 1935) dealing with Narcotic Drugs limited the meaning of cannabis to the "dried flowering or fruiting tops" of the plant, from which the resin has not been extracted; the resin extracted from such tops, and compounds, derivative, mixtures etc. therefrom.

By Chapter 96, Laws of 1939, the legislature (subsequent amendments not being pertinent) enlarged the definition of cannabis to include all parts of the plant but specifically excluded "the mature stalks of such plant." The definition therefore reads, so far as is pertinent to this action, as follows:

"Cannabis shall include all parts of the plant cannabis * * * ; but shall not include the mature stalks of such plant, * * *."

The expert who testified in the case, and the only expert attempting to identify the substance in question, testified positively in the trial court as follows, after stating there were several recognized tests that could be used:

"Q. Then it is your testimony that you cannot definitely state whether or not this was cannabis indica or cannabis sativa L.?

"A. No, *I cannot state which.*

"Q. Now, in examining cannabis, without differentiating, or marijuana, is there any way that you can determine whether or not this is the *mature stalk* of the cannabis being examined?

"A. It is my understanding that *this* test *only* gives *positive* results for the *mature stalk.*

"Q. *For the mature stalk?*

"A. *Yes.*

"Q. Now, let me get this straight so that I understand all this. You can't tell the difference between the two different kinds of cannabis, nor can you tell us.

whether or not what you examined *was the mature stalk?*

"A. The *test* is *positive only* for the *mature stalk.*

\* \* \* \* \* \*

"Q. All right. *Then it is your opinion that what you examined was the mature stalk?*

"A. *Yes.*

"Q. Of one of the two varieties of cannabis?

"A. Yes." (Emphasis ours)

The brief of the attorney general covers this point of evidence by the following observations:

"The fact that on cross-examination, the Doctor stated that the chemical test was for the mature stalk, merely created *a conflict in his testimony* for the jury to resolve." (Emphasis ours)

True, the expert identified the substance as marijuana, but he could not under his test identify the substance either as cannabis indica or cannabis sativa L., and it is cannabis sativa L., which must be proven by the state. In this connection the expert was asked the following question:

"Q. Now, was this cannabis indica?"

To this question the speculative answer given was as follows:

"A. It is probably cannabis sativa L., since that is what is grown in the States. Both give the same chemical tests."

Regardless of whether we have here cannabis indica or cannabis sativa L., or regardless of whether there is any material distinction, (see State v. Navaro, 83 Utah, 6, 26 P.2d 955) the expert based his opinion on a test that gives only positive results from the mature stalk of the plant and his testimony was positive that in his opinion what he examined was the mature stalk.

■ The possession of the mature stalk is not a violation of law in a prosecution under this particular statute—Section 54–7–13 —under which the state elected to proceed. Nor can the jury be left to speculate if there were parts of the plant other than the mature stalk involved when the only evidence in the case limits itself to mature stalks. This is not a realm in which jurors may, as they sometimes do, call on their common sense to draw inferences from the evidence before them. This is a matter requiring expert opinion as to the analysis of a minute particle of substance. This is not a case dealing with a full plant, or stems or leaves therefrom, which even some laymen may be able to identify by sight, taste or smell. This requires expert analytical testimony before a jury may intelligently and consciously make a finding on the matter. The expert in the instant case honestly told the jury all that he could in his opinion. Marijuana it was, he opined—but he is talking

about mature marijuana stalk. Whether it was cannabis indica or cannabis sativa L., which may or may not be material, he honestly could not opine. All he could say was that in his opinion there was mature stalk of some kind of cannabis; possession of which mature stalk does not constitute a violation of this particular section of the law under which the state elected to proceed.

Consequently, the state failed to establish what is the most vital and material element in the case, namely, the possession of the narcotic drug in question, to-wit: Cannabis sativa L., other than the mature stalk.

In passing it might be noted that § 54–5–14, N.M.S.A.1953 Comp. was enacted by the same legislature that enacted the General Narcotic Act, Chapter 145, Laws of 1935. This section deals with marijuana by name and not narcotic drugs generally; is general in language, and is all inclusive; and makes it a violation of law "to possess * * * cannabis indica, also known as hashish and *marijuana, be it known by whatever name,* or preparation or derivative thereof." The act, of course, excepts licensed physicians and pharmacists from the applicability thereof.

It is fundamental that a conviction of a defendant of a charge of which he has not been proven guilty cannot stand. The case is reversed and remanded to the lower court with instructions that the defendant be discharged of the charges filed against him by the state in the instant information.

IT IS SO ORDERED.

COMPTON, C. J., and MOISE, J., concur.

CARMODY and CHAVEZ, JJ., not participating.