413 P.2d 210

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Willie GARCIA, Defendant-Appellant.**

**No. 7952.**

Supreme Court of New Mexico.

April 11, 1966.

172

Snyder H. Downs, Santa Fe, for appellant.

Boston E. Witt, Atty. Gen., Wayne C. Wolf, Asst. Atty. Gen., Santa Fe, for appellee.

MOISE, Justice.

Defendant-appellant was charged in an information with violation of § 54-7-13, N.M.S.A.1953, in that he had cannabis, also known as marijuana, in his possession, unlawfully. He was found guilty and was thereupon charged as a second offender habitual criminal. Upon defendant's acknowledging that he was the same person previously convicted of the crime of grand larceny, he was sentenced to a term of not less than five years nor more than twenty years in the penitentiary. From this sentence the present appeal is prosecuted.

The record discloses that at about 7:00 p. m. on August 12, 1964, two deputy sheriffs, a state policeman and another officer were together in front of Tiny's Lounge on Water Street in Santa Fe when an unknown informer approached them and stated that in the Union Bus Depot, a little further up Water Street, he had overheard a conversation between Willie Garcia and a negro male, "and that they were making some sort of deal." While the informer was still standing with the officers, Garcia and another man—it was later determined that he was colored—came out of the bus station and drove away in a Buick car which was pointed out by the informer. The two deputies then got into their car, and the state policeman and the other officer got in another car and followed. They observed the Buick when it stopped at an apartment and Garcia got out and went inside. He stayed inside only about two minutes when he came out and got back in the Buick, which then backed out of the driveway where it was parked, and proceeded south on Rosario Street, followed by the officers in their two cars. The Buick turned east on Johnson Street, then north on Grant Avenue. Just before the Buick reached Marcy Street, state policeman Martinez signaled the deputies to speed up and pass him, and then yelled at them to stop the Buick which had just turned east on Marcy. The deputies passed and just before reaching the intersection of Lincoln and Marcy Streets, they drove in front of the Buick and stopped. The other car of officers stopped in back of the Buick.

The deputies got out of their car and approached the Buick—one on each side—identified themselves, and advised the occupants that they were under arrest. Defendant and his companion then got out of their car and were handcuffed and searched. All the cars stopped at the same time, and the officer riding with the state policeman immediately pointed to a package on the ground and stated that Garcia had thrown it out of the car. The state policeman also stated that he had seen Garcia throw the package from the car. One of the deputies picked up the package which was wrapped in newspaper and tied with a black thread, and opened it. It contained something that the deputy described as appearing to be "marijuana, flakes and seeds." Defendant Garcia testified the package did not belong to him; he did not know what was in it, and that he had thrown it out at the direction of his companion, Jim Wade.

The foregoing facts having been elicited at the trial, the defendant objected to the introduction of the package and its contents, and moved that it be suppressed as being the fruits of an illegal search, and an arrest made without probable cause. It is here argued that the court erred in overruling the objection and in refusing to suppress. We will discuss each claim of error.

Both the objection and motion are based on the Fourth Amendment to the Constitution of the United States, which reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Art. II, § 10, of the New Mexico Constitution, is almost identical. It reads:

"The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation."

Since the decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, there has been no question that the restriction on searches applicable to the federal government under the Fourth Amendment, applies equally to states by virtue of the Fourteenth Amendment. However, is there any real question present here as to the admissibility of the package of marijuana, possession of which was obtained as above outlined? We are satisfied that there is not.

The law in this regard was announced many years ago in the case of Hester v.

United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898, wherein it was held that the Fourth and Fifth Amendments to the Constitution of the United States did not make inadmissible evidence of the contents of a receptacle seen by officers in possession of one accused of concealing distilled spirits, and which was dropped and broken when the officers pursued. This rule has been applied in a number of cases having facts not too dissimilar to the case at bar.

Lee v. United States (1954) 95 U.S.App. D.C. 156, 221 F.2d 29, is a case in which police were investigating a murder wherein a quantity of jewelry had been stolen, when they received a tip that a man on the street at night was attempting to sell some jewelry. Without first obtaining a warrant, the officers approached the car where this attempted sale was to take place. When the occupant of the car was told to get out, he was seen to drop a napkin, with jewelry in it, into the street. The evidence was held competent, the court stating, "[T]here was here no seizure in the sense of the law when the officers examined the contents of the napkin after it had been dropped to the street."

Trujillo v. United States (C.A. 10, 1961) 294 F.2d 583, is to like effect. In that case, two police officers who knew Trujillo as a narcotic addict had received information that he was selling heroin. On the day in question, they observed Trujillo leave a house and walk to the sidewalk where a car was parked and in which a known narcotic addict was sitting in the right front seat. The officers stopped their car, whereupon Trujillo looked at them and then started walking down the sidewalk. The officers followed and were some six to eight feet behind Trujillo when they saw him drop a pink packet and a small foil packet. One officer called to Trujillo and the other picked up the two packets and said, "I have the stuff," whereupon the officer arrested the defendant. In affirming the trial court's refusal to suppress, and admitting of the packets into evidence, the court said:

"It is not a search to observe that which occurs openly in a public place and which is fully disclosed to visual observation. There was no seizure in disregard of any lawful right when the officers retrieved and examined the packets which had been dropped in a public place. As the evidence was obtained prior to and independent of arrest, the arguments of counsel as to the legality of the arrest merit no consideration."

See also, Burton v. United States (C.A. 9, 1960) 272 F.2d 473; Haerr v. United States (C.A. 5, 1957) 240 F.2d 533; State v. Lucero, 70 N.M. 268, 372 P.2d 837.

From the foregoing authorities, it would seem abundantly clear that the package thrown from the car as it stopped was not procured through a search; neither was there a seizure.

Defendant argues that the court erred in failing to give certain requested instructions which would have called upon the jury to determine if the arresting officers had probable cause to make the arrest. However, we do not consider whether any issues in this regard were present, since it is clear that the trial court had jurisdiction of the defendant and of the cause, and it makes no difference if defendant's presence was obtained through illegal arrest. Since, as already noted above, the evidence utilized at the trial was not a fruit of the arrest, defendant's argument can avail him nothing. State v. Wise, 58 N.M. 164, 267 P.2d 992; State v. Barreras, 64 N.M. 300, 328 P.2d 74; Call v. State (1965) 195 Kan. 688, 408 P.2d 668; State v. Sims (Mo., 1965) 391 S.W.2d 833; Ker v. People of State of Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 30 L.Ed. 421; Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541; White v. United States (C.A. 8, 1964) 328 F.2d 304.

Defendant complains that testimony of an expert witness to the effect that the material in the package thrown from the car was marijuana was erroneously admitted over defendant's objections because of the lack of proper qualifications of the expert. The claim is based on the fact that the witness had no degree in chemistry. However, he did have a B.S. degree in chemical engineering; had six years of experience working in a laboratory analyzing substances for chemical content, and had examined between six hundred and eight hundred specimens to determine if they contained marijuana. It is the trial judge's responsibility to determine whether an offered expert is sufficiently qualified to testify in a cause, and he should exercise discretion in allowing or denying the testimony to be introduced. This discretion will be interfered with by us only when it has been abused. State v. Padilla, 66 N.M. 289, 347 P.2d 312, 78 A.L.R.2d 908. We see no abuse of discretion here.

Defendant argues that the trial court should have dismissed the case because of the State's failure to prove that defendant had possession of the marijuana, together with the knowledge of its presence and narcotic character. He relies on State v. Giddings, 67 N.M. 87, 352 P.2d 1003, wherein we held that in a prosecution for possession of narcotics the State was required to prove these facts. However, we do not see how defendant can derive any comfort from this case. There is no requirement that the proof should be by direct or uncontradicted evidence. Rather, the evidence must be such as discloses some conduct, declarations or actions on the part of the accused from which the fact finder may fairly infer and which is sufficient to satisfy it beyond a reasonable doubt of knowledge in the accused of the presence and nature of the narcotics. When this has been done the burden has been met. This was the holding in People v. Mack,

12 Ill.2d 151, 145 N.E.2d 609, cited and quoted from in State v. Giddings, supra. To like effect are People v. Gory, 28 Cal. 2d 450, 170 P.2d 433; People v. Bledsoe, 75 Cal.App.2d 862, 171 P.2d 950; compare Commonwealth v. Gorodetsky, 178 Pa. Super. 467, 115 A.2d 760. The determination is one to be made by the jury under proper instructions and when substantial evidence is present to support the jury verdict, it will not be disturbed. State v. Walker, 54 N.M. 302, 223 P.2d 943. An examination of the proof here leaves no question of its sufficiency to establish the material allegations required to be proved and the court did not err in overruling defendant's motion to dismiss.

We note that defendant was sentenced as a second offender, having admitted a prior felony conviction for grand larceny. In State v. Lujan, 76 N.M. 111, 412 P.2d 405, decided March 21, 1966, we held that the habitual criminal act could not be invoked to increase the penalty of a person convicted of violating the Uniform Narcotic Drug Act. Accordingly, the sentence imposed was erroneous and excessive. The cause is remanded to the trial court for the sole purpose of setting aside the judgment and sentence, and for resentencing under § 54–7–15, subd. A, N.M.S.A.1953. In all other respects, the judgment appealed from is affirmed. It is so ordered.

CARMODY, C. J., and NOBLE, J., concur.