424 P.2d 787

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Tommy Gene EVERIDGE, Defendant-Appellant.**

**No. 8122.**

Supreme Court of New Mexico.

Feb. 13, 1967.

Neal & Neal, Tom W. Neal, Hobbs, for appellant.

Boston E. Witt, Atty. Gen., James V. Noble, Myles E. Flint, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

OMAN, Judge, Court of Appeals.

Appellant was convicted on December 15, 1965, of illegal possession of cannabis indica under the provisions of § 54–5–14, N.M.S.A. 1953, which section of our statutes defines the prohibited substance as:

"* * * any cannibis [cannabis] indica, also known as hashis [hashish] and marijuana, be it known by whatever name, or preparation or derivative thereof; * * *."

Appellant relies upon two points for reversal of the judgment of conviction. His first point is:

"NEW MEXICO LAW DOES NOT PROHIBIT THE POSSESSION OF THE MATURE STALK OF MARI-JUANA EXCEPT IN ITS GROWING FORM AND A CONVICTION FOR ILLEGAL POSSESSION OF CANNABIS INDICA CANNOT BE SUSTAINED WHERE NO PROOF IS OFFERED THAT THE SUBSTANCE POSSESSED IS A PORTION OF THE MARIJUANA PLANT OTHER THAN THE MATURE GROWING STALK."

The sole question under this point is whether or not the State, as a part of its case, had the burden of proving that the marijuana cigarettes, which had been in the possession of appellant until shortly before they were picked up from the ground where appellant had dropped them, contained portions of the marijuana plant other than the mature stalk. Or, to state it conversely, did the State have the burden of disproving that the contents of the cigarettes was the mature stalk of marijuana? The proof by the State was that the substance in the cigarettes was marijuana. The appellant offered no evidence.

Appellant's argument is that the definition of cannabis, as it appears in what is now § 54–7–2(N), N.M.S.A.1953, is necessarily the definition which must be applied to the prohibited substance under the provisions of § 54–5–14, N.M.S.A.1953. We have heretofore discussed and traced the

legislative history of our two statutes dealing with cannabis or marijuana. State v. Benavidez, 71 N.M. 19, 375 P.2d 333; State v. Romero, 74 N.M. 642, 397 P.2d 26; State v. Chavez, 77 N.M. 79, 419 P.2d 456; State v. Tapia, 77 N.M. 168, 420 P.2d 436.

The definition which appellant contends is here applicable, and which definition, as above stated, is a part of our Narcotic Drug Act and appears now as § 54–7–2(N), N.M. S.A.1953, is as follows:

"N. 'Cannabis' includes all parts of the plant cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; but shall not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks, except the resin extracted therefrom, fiber, oil, or cake;"

His argument is that since we held in State v. Romero, supra, that "We conclude as a matter of law that marijuana is identical with cannabis, cannabis sativa L., and cannabis indica", the definition above-quoted is necessarily the definition applicable under § 54–5–14, N.M.S.A.1953, as well as under the general narcotics act, §§ 54–7–1 to 54–7–49, N.M.S.A.1953. He would reach the same result by arguing that the 1935 legislature, which enacted both statutes, did not provide for the exclusion of the mature stalks from the prohibited substances, and that the exclusion first appeared in the 1939 amendment to the Narcotics Drug Act. He argues that if this exclusion is not applicable to both the Narcotics Drug Act and to the provisions of § 54–5–14, N.M.S.A.1953, then the 1939 amendment was useless, in fact is not an exclusion, and is null and void. His argument is concluded by his summary that:

"* * * Therefore, as far as the exclusionary Amendment is concerned, we feel it should be given effect not only in the Narcotic Drug Act but in the Poison Act [§ 54–5–14] as well, except, of course, for the growing stalk."

His conclusions do not necessarily follow, when consideration is given to the intended purposes of these different statutes and the specific acts and conduct prohibited by each. However, his argument finds support in a recent case in which we held the two statutes are in pari materia. State v. Chavez, supra.

Even so, we are of the opinion that appellant must fail. It is undisputed that the substance in the cigarettes was marijuana. The substance was so identified by the arresting officer because of the shape and size of the cigarettes and the way they were twisted, and because of the appear-

ance of the substance and the way it felt, tasted and smelled. He had gained his knowledge of the substance as an investigator in narcotics cases for the New Mexico State Police and in classes "pertaining to narcotics." The results of the Duquenois, the Boquet and the Ghamrawy tests, as well as a microscopic examination of the substance, which are precisely the same four tests relied upon by the State in State v. Tapia, supra, were all positive for marijuana.

Marijuana and cannabis indica are identical by the express language of § 54–5–14, N.M.S.A.1953, under which statute appellant was convicted. Marijuana, cannabis indica and cannabis sativa L., have been held to be identical as a matter of law. State v. Romero, supra.

However, it does not follow that defendant was not properly convicted under § 54–5–14, N.M.S.A.1953, because the evidence offered by the State did not expressly show the substance was something other than the mature stalk.

In State v. Tapia, supra, the contention was somewhat similar to that urged upon us here. In that case the contention was that since the evidence did not show that the substance was not chemically or physically distinguishable from cannabis sativa L., the conviction could not stand. It was pointed out in the decision in that case that we had previously held in State v. Romero, supra, that the controlling statute was not

§ 54–7–2(14), N.M.S.A.1953 [which now appears as § 54–7–2(N), N.M.S.A.1953], but § 54–7–2(15). This latter section of our statutes was amended by the 1965 legislature and now appears in its amended form as § 54–7–2(O), N.M.S.A.1953. The amendments made in this section of our statutes do not require any change in our prior holdings that this is the controlling section. By this section, cannabis [marijuana] falls within the definition of "narcotic drugs."

■ As in State v. Tapia, supra, the evidence here clearly established the substance as falling within the classifications of marijuana and narcotic drugs, and the contention that the State was required to expressly prove it was not the mature stalk, as set forth in the foregoing stated exception, is without merit.

Appellant's position must also fail for the further reason that it is expressly provided in § 54–7–40, N.M.S.A.1953, which is a part of the Narcotic Drug Act, that:

"* * * It shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this act, and the burden of proof of any such exception, excuse, proviso, or exemption, shall be upon the defendant."

■ As above stated, the defendant offered no evidence in his defense, except as it may be said his cross-examinations of the State's witnesses constituted such evidence.

Nothing was elicited by the cross-examinations which could be construed as proof by the defendant that the substance in the cigarettes which had been in his possession was the mature stalk of the cannabis plant, and there is nothing in the evidence which can be said to raise a reasonable possibility that the substance was the mature stalk.

The above-quoted language from § 54–7–40, N.M.S.A.1953, is identical with language contained in § 18, Uniform Narcotics Drug Act, Uniform Laws Annotated, 9B Miscellaneous Acts. See the following cases which have construed and applied like statutory provisions placing the burden of proof on the defendant. Stallcup v. State, 401 P.2d 197 (Okl.Cr.1965); State v. Jourdain, 225 La. 1030, 74 So.2d 203; People v. Palumbo, 5 Ill.2d 409, 125 N.E.2d 518.

■ If we were to hold as appellant urges, we would be giving no effect to the statutory language placing the burden of proof on the defendant. The State's burden of proving guilt beyond a reasonable doubt does not entail the burden of disproving all excuses, provisos, exceptions, and exemptions which might possibly relieve a defendant of criminal liability for the offense with which he is charged.

Appellant's second point is that:

"THE SEIZURE OF A PACKAGE BY AN OFFICER WITHOUT A WARRANT AND WITHOUT SUSPICION THAT THE PACKAGE CONTAINS CONTRABAND IS AN ILLEGAL SEIZURE AND THE CONTENTS OF THE PACKAGE ARE INADMISSIBLE INTO EVIDENCE."

■ The facts are that Officer Wood, who was the arresting officer above referred to, and Officer Reed had gone to the S & S Hotel to serve a warrant for the arrest of a woman. They parked in a public parking area on the east side of the hotel. Officer Wood left the automobile, walked to the southeast corner of the hotel and then to the front door at the south-end of the building. He entered the front door and proceeded down the hallway to room 110, from which he could see light coming through the transom. He knocked on the door of this room, and appellant opened the door. He explained to appellant that he had a warrant for the woman and that he had reason to believe she might be in appellant's room. He asked appellant if he could look for her in the room, and he was invited in by appellant. He searched the room and the adjoining bathroom. He did not find the woman, so he left and returned to the automobile.

During the time he had been in the hotel, Officer Reed had remained in the automobile. During this time, Officer Reed saw an arm and hand extend past the curtains and through a window. A small, bright object was dropped from the hand onto the ground near the east wall of the hotel.

Upon the return of Officer Wood to the automobile, Officer Reed related what he had observed. They determined that the window through which the arm and hand had been extended was the window to room 110. They then went over to the window and picked up a small tinfoil package from the ground beneath the window and near the east wall of the hotel. Upon opening the package they discovered it contained eleven cigarettes which Officer Wood identified as marijuana cigarettes by the way they were twisted, by their shape and size, and by the appearance, feel, smell and taste, of their contents.

Officer Wood then went back into the hotel and Officer Reed returned to the automobile. Officer Wood again knocked on the door to room 110, and it was again answered by appellant. He asked appellant if there was anyone else in the room or if anyone else had been in the room with appellant. Appellant answered "no." He then placed appellant under arrest for the possession of marijuana. He again searched the room, but found nothing.

The only warrant the officers had was the warrant for the arrest of the woman. At no time before they picked up the package and examined its contents did they have reason to believe appellant had committed a crime.

It is appellant's contention that the conduct of the officers in picking the package from the ground beneath the window of appellant's hotel room, and in examining the contents of this package, constituted an illegal seizure contrary to the constitutional safeguard against unreasonable searches and seizures contained in the Fourth Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth Amendment.

He cites as authorities for his position the cases of State v. Garcia, 76 N.M. 171, 413 P.2d 210 and Hobson v. United States, 226 F.2d 890 (8th Cir. 1955). He urges that the result here should be different from that reached in State v. Garcia, because in the Garcia case the officers had received information from an unknown informer that the defendant and another person were making some sort of "deal," and, appellant here asserts, that thus the officers had reason to believe a crime was about to be committed or had been committed, whereas in the present case, "no remote suspicion had been cast against the defendant."

In the Garcia case, the defendant threw the package containing the marijuana from the automobile in which he was riding as it came to a stop at the command of the officers. The contention that the package was not admissible in evidence was rejected. However, it was not rejected because the officers had reason to believe that a crime had been committed or was about to be committed, but because it was "abundantly clear that the package thrown from the car as it stopped was not procured

through a search; neither was there a seizure."

In the instant case there was no search for the package containing the marijuana cigarettes, and there was no seizure. The officers walked to the point beneath the window where the cigarettes had been dropped. This was outside the room of the appellant and was at a place where he had no more right to be than did the officers.

In a somewhat similar situation, in which the appellant had cached a package in a clump of weeds, the court in Bryant v. United States, 252 F.2d 746 (5th Cir. 1958) stated:

"* * * It [package containing heroin] was not on his person when it was picked up by the officers. As to it the appellant had no cause to complain of its use as evidence since it was taken neither from his person nor from his dwelling and no search was involved in its seizure. 47 Am.Jur. 513, 516, Searches and Seizures, §§ 17, 20."

In United States v. Lewis, 227 F.Supp. 433 (S.D.N.Y.1964), the defendant had thrown a package from a window of her sixth floor apartment into the courtyard at the rear of the building. An officer observed her act, and he immediately retrieved the package, which contained heroin. The court, in denying the motion to suppress the heroin as evidence against her, stated in part: ·

"* * * There is nothing to indicate that the alleyway and the courtyard which were outside the building itself was in any more preferred posture [referring to the elevator, stairs and hallway open to anyone for business with any occupant of an apartment]. Whatever rights defendant had in these areas was simply to use them in common with other tenants and such members of the public as had business there."

In People v. Sterling, 154 Cal.App.2d 401, 316 P.2d 405, the so-called bindles of heroin were thrown from a second story room in a hotel. One bindle landed within the fence at the rear of the hotel and the other bindle landed outside the fence. One officer recovered the one bindle and the other officer recovered the other bindle. In denying the objection to the admission in evidence of the heroin on the ground that it had been gained by an unlawful search and seizure, the court stated:

"* * *. In the present case, the heroin which the officers obtained from the parking lot and the enclosure at the rear of the hotel was not unlawfully obtained. ·The court did not err in receiving the heroin in evidence."

See United States ex rel. Stoner v. Myers, 219 F.Supp. 908 (E.D.Pa.1963), wherein it was held that officers lawfully on premises may seize the fruits of a crime lying about in the open. See also Trujillo v. United States, 294 F.2d 583 (10th Cir.

1961); People v. Montes, 146 Cal.App.2d 530, 303 P.2d 1064; Rothblatt, Handbook of Evidence for Criminal Trials 7–10 (1965).

The factual situation in the case of Hobson v. United States, supra, is unlike the situation in the present case. In that case the officers recovered the heroin from the enclosed backyard of defendant's home; they were illegally upon defendant's premises; the heroin was thrown out the back window while the officers were seeking to gain admission to the defendant's home without a warrant; and just immediately before or immediately after the package was thrown out the window, and before the officers knew what was in it, they forced their way into defendant's home by breaking a glass in the outer door and forcing open the inner door.

In holding that the package of heroin had been illegally seized, the court stated:

"Considering the total atmosphere of the case as directed by United States v. Rabinowitz, supra, we can not separate the throwing of the package from the unlawful search. The defendant's action in throwing the package was not voluntary but was forced by the actions of the officers. * * *"

The total atmosphere of the present case is one of proper and permitted conduct on the part of the officers. The initial search of appellant's room was made with appellant's permission and consent, and this search was only for the person of a woman pursuant to an arrest warrant. No unlawful act of the officers can be said to have forced the appellant to drop the marijuana cigarettes out the window. His reasons for so doing are not made to appear in the record on this appeal.

Finding no error, the judgment of conviction should be affirmed.

It is so ordered.

COMPTON and CARMODY, JJ., concur.