587 P.2d 47
**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Danny P. BLEA, Defendant-Appellant.**

**No. 3669.**

Court of Appeals of New Mexico.

Oct. 10, 1978.

Writ of Certiorari Denied Nov. 22, 1978.

Vince D'Angelo, D'Angelo Law Firm, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., James F. Blackmer, Asst. Atty. Gen., Albuquerque, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant appeals his conviction for trafficking in heroin. He asserts that, at trial, there was not a sufficient foundation for testimony about a narcotics sniffing dog. The claim is frivolous. Defendant never informed the trial court as to what "foundation" was lacking and did not, on cross-examination, attempt to attack the propriety of the testimony that the dog was "trained for sniffing out narcotics, specifically heroin." See *Dahl v. Turner*, 80 N.M. 564, 458 P.2d 816, 39 A.L.R.3d 207 (Ct.App. 1969). In addition, testimony concerning use of the dog went to the absence of heroin in the area where it was found after defendant arrived on the scene. Several witnesses testified to this absence. Even if there was an insufficient foundation concerning the dog's qualifications, the use of the dog testimony did not harm defendant because cumulative of other testimony. See *State v. Brown*, 91 N.M. 320, 573 P.2d 675 (Ct.App.1977). The issue for discussion concerns the trial court's refusal to suppress the heroin at a pretrial motion hearing.

Officers were at a residence searching for heroin pursuant to a search warrant. Defendant drove onto the premises and parked his pickup truck near the rear of the residence. Four officers immediately approached the pickup. Defendant was told to get out of his vehicle and did so. He was patted down for weapons. There is no issue as to the propriety of the officers detaining defendant until the search, pursuant to the warrant, was concluded. *State v. Valdez*, 91 N.M. 567, 577 P.2d 465 (Ct.App.1978). There is no issue concerning the propriety of requiring defendant to exit his vehicle or concerning the propriety of frisking defendant for weapons. The evidence is uncontradicted that persons coming upon the scene of a heroin search are often armed and often will attempt to leave the scene, using their vehicle "for a fast getaway". See *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

The search and seizure issue arises because of a conflict in the evidence as to how the heroin was found. The State's theory, supported by testimony of officers, is that the heroin fell to the ground as defendant got out of his pickup. Defendant's theory,

supported by defendant's testimony, is that when he saw the officers approaching he placed the packet of heroin in the sleeve of his jacket, which was lying on the seat of the pickup. According to defendant, after he was frisked, an officer reached into the pickup, took his jacket and searched it. Defendant testified the officer "kept jiggling the jacket around, the heroin must have kept sliding slowly down the sleeve, cause its a real thick leather jacket, and it fell out, and he didn't see it, and he patted the—and then he went and threw the jacket back in the truck or on top of the hood." This is the only evidence at the suppression hearing as to the nature of the "search" of the jacket. According to defendant, the heroin was discovered on the ground, after the jacket "search".

The trial court found:

13. Either when Blea exited the vehicle, or while the officer was searching the jacket, the tinfoil containing the heroin fell the [sic] the ground.

Defendant recognizes that if the heroin fell to the ground when he exited his vehicle, the seizure of the heroin was proper. *State v. Everidge*, 77 N.M. 505, 424 P.2d 787 (1967); *State v. Garcia*, 76 N.M. 171, 413 P.2d 210 (1966). Defendant states:

On the other hand, if the packet of heroin fell to the ground as a result of the police officers [sic] search of Defendant's jacket, then the evidence must be suppressed. Police had no right, either to remove Defendant's jacket from the cab of the pick-up truck, or to search it once it had been removed. . . . Consequently, the seizure of the heroin would be inadmissible as fruit of the poisoned tree.

Defendant contends he is entitled to a specific finding as to when the heroin fell to the ground. This contention does not involve a question of whether the trial court was required to make findings in connection with the motion to suppress. Rule of Crim. Proc. 33 does not require findings in connection with a pretrial motion. Compare Rule of Crim.Proc. 38(c). Defendant claims that since the trial court made findings, he is

entitled to more than the either/or findings of the trial court which he asserts lead to legally inconsistent results. The State claims defendant did not ask for a specific finding; a stipulation in the record shows that he did.

The State also asserts that it makes no difference whether the trial court's alternative finding was proper. It argues: "[T]he jury itself appears to have resolved this issue by its unanimous verdict finding the Defendant Guilty". This argument is without merit. In reviewing the trial court's decision on the motion to suppress, the facts reviewed on appeal are the facts before the trial court at the suppression hearing. Further, there is no claim that the motion to suppress was renewed at trial. See *Rodriguez v. State*, 91 N.M. 126, 580 P.2d 126 (1978). Even if it had been, it was not a jury issue. The reasonableness of a search or seizure is a matter of law to be determined by the trial court. *State v. Garcia*, 83 N.M. 490, 493 P.2d 975 (Ct.App. 1971); see *State v. Whiteshield*, 91 N.M. 96, 570 P.2d 927 (Ct.App.1977). No issue as to the propriety of police seizure of the heroin was presented to the jury by the instructions in this case.

If, as defendant asserts, the alternative finding of the trial court is incorrect, the proper disposition would be a remand to the trial court for a specific finding as to when the heroin fell to the ground. Compare *State v. Anaya*, 76 N.M. 572, 417 P.2d 58 (1966). We do not remand for a specific finding because the alternative finding is not erroneous.

There is nothing showing probable cause to arrest defendant or probable cause to search defendant's pickup prior to discovery of the heroin. Thus, there is no basis for applying the automobile exception to the law of search and seizure. *State v. Luna*, 91 N.M. 560, 577 P.2d 458 (Ct.App. 1978); *State v. Barton*, 92 N.M. 118, 584 P.2d 165 (Ct.App.1978). Not having been arrested, under defendant's version of facts, until after the heroin was discovered, police activity in connection with the jacket can-

not be justified on the basis of a search incident to arrest. See *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

The trial court found:

15. It is the common practice, when executing heroin searches on premises where there is probable cause to believe heroin is being sold, for officers to "pat down" and examine the people who come on the premises during the search and make inquiries as to their business on the premises. Such persons are commonly asked to exit vehicles to accomplish the "pat down" and questioning. This is done because those frequenting premises where heroin is sold are often purchasers of heroin and (a) often carry dangerous weapons, (b) the vehicles may be used for a fast getaway or a weapon, and (c) they will often attempt to dispose of narcotics or other evidence.

The trial court concluded:

2. It was not unreasonable for the police officers to search the jacket lying on the front seat of the truck in that it was an article of wearing apparel where weapons or contraband could likely be carried, and which jacket was and would be within easy access by Blea prior to his exiting the truck and while he was being frisked and examined, and upon his re-entry into the truck.

The trial court's conclusion is to be sustained in this case because the only evidence as to the nature of the jacket "search" shows that this search was a search for weapons. There was a shaking and a patting of the jacket, then it was discarded. This was consistent with requiring defendant to exit the pickup because officers could not tell whether defendant was armed while in the pickup. This was also consistent with the frisk of defendant for weapons as soon as he got out of the pickup.

The evidence is uncontradicted that the jacket was within defendant's "grabbing" range once he exited the pickup. Defendant testified that after being frisked and after emptying his pockets, he reached into

the pickup for a check stub in order to explain the amount of cash he was carrying. The fact that the jacket, inside the pickup, was within defendant's grabbing range, distinguishes *Government of Canal Zone v. Bender*, 573 F.2d 1329 (5th Cir. 1978), on which defendant relies. Because the jacket was within defendant's grabbing range, the officer could properly search the jacket for weapons. *Williams v. State*, 19 Md.App. 204, 310 A.2d 593 (1973).

The fact that the officers did not have probable cause to believe that this defendant was armed does not make illegal the search of the jacket for weapons. It was sufficient that the officers had probable cause to believe that visitors to the premises were heroin purchasers, and such persons "often" are armed. There was some danger that such a person, detained to preserve the integrity of the search pursuant to warrant, might seek to use a weapon. See *United States v. Chadwick*, supra. This justifies a weapons search, both of defendant and the jacket within defendant's grabbing range.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.