825 P.2d 243

STATE of New Mexico,
Plaintiff–Appellee,

v.

Ricardo ESGUERRA, a/k/a Gary Richard Scholl, a/k/a Gary Richard Schull, a/k/a Frank Garcia, Defendant–Appellant.

No. 12373.

Court of Appeals of New Mexico.

Dec. 20, 1991.

Tom Udall, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Paul J. Kennedy, Albuquerque, for defendant-appellant.

## OPINION

FLORES, Judge.

Esguerra (defendant) appeals his conviction for trafficking (by possession with intent to distribute) cocaine. Defendant pled guilty to the charge, expressly reserving his right to appeal the trial court's ruling denying his motions to suppress evidence. On appeal, he argues that the trial court erred in its determination that he lacked standing to challenge the search of his automobile, hotel room, and knapsack. We reverse the trial court's ruling that defendant lacked standing to challenge the search of his automobile and hotel room, and we affirm the trial court's ruling that defendant lacked standing to challenge the search of the knapsack. We remand for a hearing to determine whether the evidence obtained from defendant's automobile and hotel room is admissible. If the evidence is determined to be admissible, the trial court should re-enter its judgment and sentence. If, however, it is determined that the evidence in question is not admissible, defendant should be given the opportunity to withdraw his guilty plea.

*Facts*

Defendant, operating under several aliases including Gary Richard Scholl, Gary Richard Schull, and Frank Garcia, became a target of the Albuquerque Police Department Repeat Offender Project (ROP) in October 1988. On November 3, 1988, ROP detectives entered and searched defendant's apartment and vehicle. A search warrant had been issued and the affidavit in support of the warrant described defendant's apartment as follows:

The premises to be searched is [sic] Apartment #F at 5300 Eubank NE, Building # 6. The complex is located on the northwest corner of Eubank and Spain NE. Building # 6 is located in the northwest corner of the complex and is just east of Eubank NE. The apartment is located on the north side of the building and the apartment faces (door) to the west. The building is of wood and stucco construction with a pitched roof. The stucco is a beige color and the roof is dark brown. The apartment door has a white letter, approximately two inches high, "F".

The description quoted above is the only language contained in the "premises to be searched" portion of the affidavit for search warrant. Defendant's automobile was not included in the "premises to be searched" portion of the affidavit. Defendant's automobile was identified solely in the section of the affidavit setting forth the facts supporting issuance of the search warrant. In the last sentence of the affidavit, affiant requested that the search warrant be granted for "Esguerras' [sic] residence, curtilage and vehicle." During the search of defendant's apartment several items of contraband were found, including one-eighth to one-fourth ounce of cocaine, over $4500, a shotgun, cutting agent, packaging materials, and two triple beam scales. The ROP detectives then proceeded to search defendant's automobile located in the parking lot of the apartment complex. A loaded revolver was discovered under the dashboard of the driver's side of the automobile. Inspection of the trunk revealed a locked briefcase later found to contain $8428 and what was described as a

"white, powdery substance." Defendant was absent during the search of his apartment and his automobile.

Four days after the search, on November 7, 1988, a confidential source informed ROP detectives that defendant had returned to his apartment. When detectives arrived, an unidentified bystander related that defendant had left the complex in an Albuquerque Yellow Cab. A phone call to Albuquerque Yellow Cab revealed defendant's destination as the Howard Johnson's Plaza Hotel located at 6000 Pan American N.E. Upon arrival at the hotel, detectives observed a person matching defendant's description entering the elevator. From a photograph, the desk clerk identified defendant as the man who had just checked into room 411. The detectives proceeded to room 411, knocked on the door, and identified themselves as the police. There was no answer. The hotel security guard then unlocked the door, and the detectives entered the room. Defendant was not in the room; however, the detectives observed a set of open glass doors leading to the balcony.

Surmising that defendant had "spidermanned" down from the balcony, Detective Lovato searched the immediate area surrounding the hotel and discovered a blue knapsack in the parking lot. The knapsack was opened and found to contain clothing and two square-shaped bundles tightly packed in brown plastic garbage bags. Detective Lovato then closed the knapsack and returned to the hotel to ask the desk clerk if defendant had arrived with any luggage. The clerk related that defendant had indeed been carrying a blue knapsack. A search warrant was then obtained for both room 411 and the knapsack, and a full search ensued. The search of the hotel room produced a suitcase containing clothing; identification cards in defendant's aliases of Lopez, Garcia, and Scholl; and a camera. A subsequent drug analysis of the contents of the bundles found in the knapsack showed they contained 2.005 kilograms of cocaine.

The record shows the existence of an outstanding felony warrant for defendant under the alias of Gary Scholl. The warrant, dated September 9, 1987, charged defendant with aggravated burglary, aggravated assault, conspiracy, and false imprisonment. On November 9, 1988, defendant was arrested pursuant to the outstanding felony warrant as well as for three counts of trafficking cocaine.

### Standard of Review

The appropriate standard of appellate review of rulings on suppression motions is whether the law was correctly applied to the facts, viewing them in the manner most favorable to the prevailing party. All reasonable inferences in support of the court's decision will be indulged in and all inferences or evidence to the contrary will be disregarded. *State v. Boeglin,* 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983). Under this standard, while we find that the trial court correctly applied the law to the facts regarding the knapsack, we find it failed to do the same with respect to defendant's automobile and hotel room.

### Standing to Challenge Search of Automobile

■ Defendant challenges the trial court's ruling that he lacked standing to assert a fourth amendment claim against the search of his automobile. The state concedes that the trial court erred in its ruling. We agree.

The trial court based its ruling that defendant lacked standing to challenge this search by reference to his failure to satisfy the test set forth in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In *Rakas,* the Court found that the defendants lacked standing to object to the lawfulness of the search of the car in which they traveled because they conceded that they did not own the car or the evidence obtained therein. The Court held that absent this possessory interest, the defendants lacked legitimate expectations of privacy in the areas which were the subject of the search. *Rakas v. Illinois,* 439 U.S. at 148–49, 99 S.Ct. at 432–33. On issues involving challenges to searches and seizures, the term "standing" is often used interchangeably with the phrase "legitimate expectation of privacy." *See State v. Waggoner,* 97 N.M. 73, 636 P.2d 892 (Ct. App.1981). The question of legitimate expectation of privacy involves two inquiries: "(1) has the individual by his conduct exhibited an actual (subjective) expectation of privacy; and (2) is this individual's subjective expectation one that society is prepared to recognize as reasonable." *State v. Clark,* 105 N.M. 10, 727 P.2d 949 (Ct. App.1986) (citing *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)). It is generally recognized, however, that one who owns, controls, or lawfully possesses property thereby has a legitimate expectation of privacy in that property protected by the fourth amendment. *Rakas v. Illinois,* 439 U.S. at 143–44 n. 12, 99 S.Ct. at 430–31 n. 12; *State v. Villanueva,* 110 N.M. 359, 365, 796 P.2d 252, 258 (Ct.App.1990).

Unlike the defendants in *Rakas,* defendant's property interest in the automobile searched in this case was clearly established by undisputed evidence before the trial court in the form of police records. The record contains an affidavit stating that police checked the license plate with the National Crime Information Center, which revealed defendant as the registered owner of the automobile. We therefore conclude that defendant had the requisite legitimate expectation of privacy to assert a fourth amendment challenge to the search of his automobile by virtue of his status as its owner.

### Standing to Challenge Search of Hotel Room

■ Defendant challenges the trial court's ruling denying him standing to assert a fourth amendment claim against the search of the hotel room. The state concedes that the trial court erred in its ruling. We agree.

A person's dwelling receives the highest degree of protection from unreasonable intrusion by the government and a defendant's standing to assert his rights with respect to his home is well established in

our fourth amendment jurisprudence. *See McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); *State v. Clark.* This court has held that a motel room is the equivalent of a dwelling for fourth amendment purposes. *State v. Copeland,* 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App.1986) (citing *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964)). Evidence before the trial court unequivocally showed that defendant was the registered guest in room 411. As a registered guest, defendant was entitled to the same rights he would have possessed had his private residence been searched rather than his hotel room. The trial court erred in ruling that defendant had no standing to challenge the search of his hotel room.

*Standing to Challenge Search of Knapsack*

■ Defendant contests the trial court's ruling that his knapsack had been abandoned, thus denying him standing to challenge its search. When an individual's behavior indicates an intent to abandon his possessions, he is divested of any expectation of privacy, and the fourth amendment will no longer protect him against a warrantless search. *State v. Clark,* 105 N.M. at 12–13, 727 P.2d at 951–52. Abandonment is a factual determination based upon a combination of acts and intent, and the burden lies with the state to affirmatively show that abandonment has occurred. *Id.* at 13, 727 P.2d at 952. "The showing must be by clear, unequivocal and decisive evidence." *Id.*

■ Upon review of the evidence presented below, we hold that the trial court could find, based on substantial evidence, that defendant intended to abandon the knapsack based on the fact that he left it behind in a public parking lot. *See State v. Boeglin,* 100 N.M. at 132, 666 P.2d at 1279 (reviewing court will not disturb trial court's denial of motion to suppress if supported by substantial evidence). Therefore, under *Clark,* the trial court was correct in denying defendant standing to challenge the search of his knapsack.

■ We reject defendant's attempt to distinguish his case from the case upon which the state bases its abandonment theory. The state relies on *State v. Everidge,* 77 N.M. 505, 424 P.2d 787 (1967), in which the New Mexico Supreme Court held that a search of the contents of a package dropped from a hotel window to the ground below was valid because the package was not obtained through either a search or seizure. The package was outside the appellant's hotel room and was in a public place where the officers' right to be matched that of the appellant. The court noted that the officers' conduct was proper and permitted under the circumstances. *State v. Everidge,* 77 N.M. at 512, 424 P.2d at 794. Defendant distinguishes *Everidge* by claiming that the police conduct leading to the discovery of his knapsack was *not* "proper and permitted under the circumstances." Defendant contends that the police pursuit which forced him to flee and leave his knapsack behind was conducted without a search warrant for his hotel room, thereby coating the evidence with the taint of the illegal entry into the hotel room. The trial court never reached the merits on this issue; however, in *State v. Garcia,* 76 N.M. 171, 413 P.2d 210 (1966), the New Mexico Supreme Court directly addressed the question whether an illegal pursuit leading to abandonment of property requires the exclusion of that property from evidence. It does not.

In *Garcia,* the defendant had thrown a package containing marijuana from his car window as police forced him to pull aside. The supreme court affirmed the lower court's denial of the defendant's motion to suppress the drugs as being the fruits of an illegal search. The court cited the following language to uphold the admission of the abandoned package:

"It is not a search to observe that which occurs openly in a public place and which is fully disclosed to visual observation. There was no seizure in disregard of any lawful right when the officers retrieved and examined the packets which had been dropped in a public place. As the evidence was obtained prior to and independent of arrest, *the arguments of counsel as to the legality of the arrest merit no consideration.*" [Emphasis added.]

*State v. Garcia,* 76 N.M. at 175, 413 P.2d at 214 (quoting *Trujillo v. United States,* 294 F.2d 583 (10th Cir.1961)); *see also California v. Hodari D.,* —— U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (cocaine abandoned by defendant prior to being tackled by a police officer pursuing defendant without probable cause was not the fruit of a seizure and was therefore admissible); *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) (there is no seizure in the sense of the law when the government examines property that has been abandoned by defendant, regardless of the legality of the pursuit leading to abandonment).

*Standard of Particularity*

■ The state contends that although defendant has proper standing to challenge the search of his car and hotel room, his motions to suppress do not meet the specificity requirements set forth in *State v. Goss,* 111 N.M. 530, 807 P.2d 228 (Ct.App. 1991), and therefore preclude remand for further determination. We disagree. *Goss* relies on 4 Wayne R. LaFave, *Search and Seizure* § 11.2(a), 214 (2d ed. 1987), for its contention that "motions to suppress must set out with particularity the grounds relied on for the relief sought." *Goss,* 111 N.M. at 533, 807 P.2d at 231. LaFave, in turn, cites to *State v. Miller,* 17 Or.App. 352, 521 P.2d 1330 (1974), which states the following:

> In *State v. Johnson/Imel* we held that "a written motion to suppress evidence must specify with particularity the grounds upon which the motion is based." 98 Adv.Sh. at 1386, [16 Or.App. 560] 519 P.2d [1053] at 1054. By way of illustration, we stated that *a motion claiming "there was no probable cause to arrest" could be sufficient.* 98 Adv. Sh. at 1392, 519 P.2d at 1057. Applying that standard, we here conclude that while the motion and supporting documents are, as the state correctly points out, generally conclusory, they do contain the minimum specificity required by *Johnson/Imel.* [Emphasis added.]

*State v. Miller,* 521 P.2d at 1332.

Defendant's motion to suppress the evidence discovered in his hotel room states "[t]hat *without probable cause or a [s]earch [w]arrant* * * * officers of the Albuquerque Police Department did violate [d]efendant's constitutional rights by searching [r]oom 411 * * *." (emphasis added). Defendant's motion to suppress the evidence seized from his automobile asserts that "officers, *without a [s]earch [w]arrant or exigent circumstances,* broke into an automobile owned by the [d]efendant * * * * *Without probable cause or a [w]arrant,* officers then * * * broke into the locked briefcase * * *." (emphasis added). Given the language of the motions, we determine that defendant has met the standard of particularity set forth in *Goss.*

*Conclusion*

■ Error in the admission of evidence in a criminal trial must be held prejudicial rather than harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Clark v. State,* 112 N.M. 485, 816 P.2d 1107 (1991) (citing *State v. Trujillo,* 95 N.M. 535, 541, 624 P.2d 44, 50 (1981)). If defendant's decision to plead guilty was influenced by the trial court's prior admission of the evidence found in his car or hotel room, there is a fair inference that the evidence might have contributed to the conviction. Therefore, we now remand for a full hearing on defendant's motions to suppress the evidence obtained from his automobile and hotel room. Should the trial court determine that the evidence is indeed admissible, the trial court should re-enter its judgment and sentence. If, however, the trial court determines that the evidence in question is not admissible, defendant should be given the opportunity to withdraw his guilty plea.

IT IS SO ORDERED.

ALARID, C.J., and PICKARD, J., concur.