1998-NMCA-177

970 P.2d 1151

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jerry Lee INGRAM, Defendant–Appellant.**

**No. 18,640.**

Court of Appeals of New Mexico.

Oct. 6, 1998.

Certiorari Denied, No. 25,433,
Nov. 19, 1998.

Tom Udall, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Carolyn R. Glick, Assistant Public Defender, Santa Fe, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant Jerry Lee Ingram appeals the district court's denial of his motion to suppress marijuana and cocaine evidence

seized during a traffic stop, contending that the items seized were the fruit of an unlawful search or an unreasonable detention by police officers. Defendant also appeals his sentence of 364 days of imprisonment for failure to have a valid driver's license, claiming that the sentence is illegal. We reverse the denial of Defendant's motion to suppress, and we vacate the 364-day sentence.

*Background*

{2} Shortly before 7:00 p.m. on September 16, 1996, Tucumcari Police Officer Joseph Alvidrez stopped a car driven by Defendant because neither Defendant nor his passenger was wearing a seat belt. In the course of the stop, Officer Alvidrez learned that Defendant did not have a valid driver's license. He also noticed that the passenger was acting in a nervous manner. He asked the passenger to get out of the vehicle, patted him down, and arrested him as a result of the pat down. While he was dealing with the passenger, Officer Alvidrez called for backup. Officer Charles Aguirre responded. Officer Alvidrez told Officer Aguirre to pat down Defendant. Defendant had not been placed under arrest at this time, but neither was he free to leave, because Officer Alvidrez intended to cite him for the seat belt violation and lack of a valid driver's license.

{3} Instead of patting down Defendant, Officer Aguirre asked him to step out of his car and to empty his pockets. The officer admitted that his "request" could have been interpreted as a directive. Defendant pulled something from his pockets, but seconds later, without disclosing what was in his hands, he turned and fled. The officers gave chase, and Defendant ran into an alley. Officer Aguirre tackled Defendant and as he fell down, Defendant threw some items over a fence. The items turned out to be marijuana, cocaine, and a twenty dollar bill. Defendant was arrested and charged with possession of cocaine, possession of marijuana, failure to use a seat belt, and driving without a valid license.

{4} Defendant sought to have the drug evidence suppressed. After a hearing, his motion was denied. Defendant entered a conditional guilty plea, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and *State v. Hodge*, 118 N.M. 410, 418, 882 P.2d 1, 9 (1994), reserving the right to appeal the denial of his motion to suppress. The court sentenced Defendant to serve eighteen months on the cocaine charge, six months on the marijuana charge, and 364 days on the driver's license charge, and fined Defendant $25 on the seat belt violation. This appeal followed.

*Suppression of the Evidence*

{5} Defendant contends that the district court erred in failing to suppress the cocaine and marijuana he tossed while being chased by the officers, claiming that the evidence seized was the fruit of an unlawful search or an unreasonable detention by the officers. In reviewing the denial of a motion to suppress, the appropriate standard is whether the law was correctly applied to the facts, viewing them in a light most favorable to the court's ruling. *See State v. Esguerra*, 113 N.M. 310, 313, 825 P.2d 243, 246 (Ct.App. 1991). But we review the application of the law to the facts de novo. *See State v. Flores*, 1996–NMCA–059, ¶ 6, 122 N.M. 84, 920 P.2d 1038. Under this standard, we reverse the district court's denial of Defendant's motion to suppress and remand for further proceedings consistent with this opinion.

1. *Unreasonable Search*

{6} The Fourth Amendment of the United States Constitution, which applies to the states through the Fourteenth Amendment, proscribes unreasonable searches, as does Article II, Section 10 of the New Mexico Constitution. *See Mapp v. Ohio*, 367 U.S. 643, 648, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Gutierrez*, 116 N.M. 431, 444, 863 P.2d 1052, 1065 (1993). It is well-established doctrine that a police officer, in an encounter with a citizen, may conduct a protective search, known as a *Terry* search, to ensure that the individual is not armed. *See Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Eskridge*, 1997–NMCA–106, ¶ 24, 124 N.M. 227, 947 P.2d 502 (an officer concerned about his or her personal safety may check for weapons

during an investigatory stop when the officer reasonably believes an individual may be armed and dangerous). The purpose of such a *Terry* search is to allow the officer to conduct an investigation without fear of violence. *See Minnesota v. Dickerson,* 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Flores,* 1996–NMCA–059, ¶ 17, 122 N.M. 84, 920 P.2d 1038 (a *Terry* search is allowed for the limited purpose of protecting the investigating officer).

{7} A *Terry* search permits an officer to pat down the outer clothing of the individual to feel for weapons. *See* 392 U.S. at 29, 88 S.Ct. 1868. A protective search may be unreasonable when it extends beyond ensuring that the person is not armed. *See id.* at 29–30, 88 S.Ct. 1868 (an officer may not place his or her hands in the individual's pockets or under the outer surface of an individual's garments until the officer feels weapons, and then the officer may merely reach for and remove the weapons); *Sibron v. New York,* 392 U.S. 40, 65, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (an officer reaching into an individual's pocket without first conducting "an initial limited exploration" is unreasonable); *see also Flores,* 1996–NMCA–059, ¶ 17, 122 N.M. 84, 920 P.2d 1038 (absent probable cause, a *Terry* search for weapons may not be expanded into a search for evidence of a crime).

{8} In the case before us, Officer Aguirre did not feel the outside of Defendant's pocket but asked Defendant to empty his pockets at a time when Defendant was not free to leave and in a manner that the officer admitted was directive. Officer Aguirre testified that when he asked Defendant to empty his pockets, Defendant started to remove something, but at the same time, Defendant also turned and fled. The "examination of the contents of a person's pocket is clearly a search, whether the pocket is emptied by the officer or by the person under the compulsion of the circumstances." *United States v. DiGiacomo,* 579 F.2d 1211, 1215 (10th Cir.1978); *cf. Dickerson,* 508 U.S. at 378, 113 S.Ct. 2130 (manipulation of a suspect's pocket in order to ascertain its contents by feel is a search). This Court too has held that a request to empty one's pockets,

under circumstances similar to those in this case, is a search without consent. *See State v. Garcia,* 83 N.M. 490, 492, 493 P.2d 975, 977 (Ct.App.1971). Based upon the facts presented at the suppression hearing, Officer Aguirre may have been justified in conducting a pat down for weapons, but by directing Defendant to empty his pockets, the officer exceeded the constitutionally permissible bounds of a *Terry* search.

### 2. *Exclusionary Rule*

{9} Evidence which is obtained as a result of an unconstitutional search or seizure may be suppressed under the "exclusionary rule." *See Gutierrez,* 116 N.M. at 444–47, 863 P.2d at 1065–68; *see also Dickerson,* 508 U.S. at 373, 113 S.Ct. 2130 (if a *Terry* search goes beyond what is necessary to determine whether a suspect is armed, it is no longer valid and its fruit will be suppressed); *Mapp,* 367 U.S. at 655, 81 S.Ct. 1684. Having determined that Officer Aguirre exceeded the limits of a constitutionally permissible protective search by compelling Defendant to empty his pockets, resulting in a search without consent, we turn to the question of whether the drugs discarded by Defendant were the fruit of the unlawful search. *See Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

{10} Evidence which is obtained by exploitation of a "primary illegality" will be the fruit of that search and will be suppressed, unless an "intervening independent act of a free will" can purge the taint of the illegally seized evidence. *Id.* at 486, 488, 83 S.Ct. 407. The State contends that just such an intervening event occurred when Defendant threw away the contraband, thereby abandoning the property, and that once Defendant abandoned the property the officers found the items in plain view. Property that is abandoned normally may be admissible. *See Esguerra,* 113 N.M. at 314, 825 P.2d at 247. However, when the "abandonment was coerced by or otherwise the fruit of unlawful police action … courts have not hesitated to hold that property inadmissible." 1 Wayne R. LaFave, *Search and Seizure* § 2.6(b), at 584–85 (3d ed.1996) (footnotes omitted).

Professor LaFave notes that abandonment of property in the face of an illegal search and seizure must result in suppression of the seized evidence because to hold otherwise is "an invitation to police to engage in illegal [actions]." *Id.* § 2.6(b), at 585 n. 69.

{11}   The distinction between voluntary abandonment and coerced discard of property is an important one that our previous opinions have not directly addressed. Our courts have reviewed voluntary abandonment in contexts in which alleged illegal police activity took place after the abandonment of the property. In *Esguerra*, the trial court admitted evidence seized after a warrantless search of the defendant's knapsack. *See* 113 N.M. at 314, 825 P.2d at 247. Police officers found the knapsack in the parking lot of a motel after having entered the defendant's motel room without a valid search warrant. *See id.* The defendant claimed that because police officers entered his hotel room without a search warrant, his flight prior to their entry and his subsequent abandonment of the knapsack were a result of the improper police conduct, and therefore the knapsack should be suppressed. *See id.* This Court rejected that argument and held that substantial evidence supported the fact that the defendant intended to abandon his knapsack because he left it in a public lot. *See id.* Since the abandonment took place prior to the allegedly illegal police activity, the defendant could not demonstrate the necessary causal relationship between the illegal search and the discard of the property to be entitled to the protections of the Fourth Amendment against an unreasonable search.

{12}   In *Esguerra*, we relied upon *State v. Garcia*, 76 N.M. 171, 413 P.2d 210 (1966), for the proposition that abandonment of property as a result of a police pursuit makes the evidence admissible. On closer inspection of *Garcia*, in light of the present case, we note that in *Garcia*, the abandonment took place prior to any illegal police search. In *Garcia*, contraband had been thrown from the defendant's car while police forced the defendant to pull over. *See id.* at 173–74, 413 P.2d at 212. The Supreme Court, relying on case law in which police have found evidence of illegal activity in plain view when approach-

ing an individual, affirmed the trial court's admission of the contraband, and held that the police recovery of the package was not a result of a search or a seizure. *See id.* at 175, 413 P.2d at 213. The *Garcia* Court did not discuss the legality of the stop. However, in *Garcia* no actual illegal police search or seizure took place prior to the discard of the property. The Court held the property to be abandoned, and the defendant was not entitled to the protections of the Fourth Amendment. Here, on the other hand, Defendant did not discard the property until after the police conducted an illegal search.

{13}   The case on appeal is different from the United States Supreme Court case of *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). In *Hodari D.*, there had not been an actual illegal search or seizure prior to the abandonment. The defendant fled after spotting police, an officer chased him on foot, and just prior to being tackled, the defendant threw away the contraband. *See id.* at 623, 111 S.Ct. 1547. The United States Supreme Court held that because the defendant had not been "seized" at the time he discarded the contraband, the protections of the Fourth Amendment did not apply. *See id.* at 626, 629, 111 S.Ct. 1547. The Court reasoned that the defendant abandoned the property, as in *Esguerra* and *Garcia;* he did not discard it as a result of an illegal search or seizure.

{14}   Instead, the case on appeal is more like the Tenth Circuit case of *United States v. King.* 990 F.2d 1552, 1564 (10th Cir.1993). In *King,* the initial detention in which the police asked the defendant to exit his vehicle was justified. *See id.* at 1562. However, when the officer escalated the initial detention into a full arrest without probable cause, seizure of the defendant and evidence, including contraband discarded by a passenger outside the vehicle, was unreasonable and violated the Fourth Amendment. *See id.* at 1563. In examining the issue of discarded drugs by the passenger, the Tenth Circuit upheld the district court's suppression of the evidence as the fruit of an unlawful detention. Rejecting the government's abandonment argument, the court found that the passenger's discarding of property coerced by illegal police con-

duct was not abandonment sufficient to purge the taint of the Fourth Amendment violation and that "the evidence weigh[ed] heavily in support of a finding that the drugs were the fruit of the unlawful seizure." *Id.* at 1564.

{15} The distinction between coerced discard as a result of an illegal search or seizure and abandonment prior to an illegal police search or seizure is one of voluntariness. An illegal search or seizure may coerce a defendant to discard property such that the defendant's actions would not be considered voluntary abandonment. To ascertain whether discard of contraband after an unlawful search or seizure is voluntary, we look to whether the seized evidence is an "exploitation" of the Fourth Amendment violation or instead obtained " 'by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun,* 371 U.S. at 488, 83 S.Ct. 407 (quoting John MacArthur Maguire, *Evidence of Guilt* § 5.07, at 221 (1959)). The Tenth Circuit in *King* noted that "several factors guide [this] inquiry including the 'temporal proximity' of the Fourth Amendment violation and [the] discarding of the evidence, any 'intervening circumstances,' and 'the purpose and flagrancy of the official misconduct.' " *King,* 990 F.2d at 1563–64 (quoting *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)).

{16} Each of these factors militate against the State's position in this case. As in *King,* the initial detention of Defendant was a valid stop, and a protective pat down may have been justified. But Officer Aguirre's initiation of a search of Defendant's pockets was unreasonable and violated the Fourth Amendment. This illegal search caused Defendant to immediately flee, and he discarded the property shortly thereafter. Because Defendant merely reacted to the unconstitutional search, his flight and discard of the property were not independent intervening acts sufficient to "purge the primary taint of the [officer's] unlawful invasion." *Wong Sun,* 371 U.S. at 486, 83 S.Ct. 407. Defendant's abandonment of the property was a direct result of the actual illegal police search. As Defendant did not act voluntarily, the evidence must be suppressed.

{17} Because the evidence procured must be suppressed as the fruit of an unlawful search, we do not address Defendant's other contention that the evidence was seized as the result of an unreasonable detention.

*Sentence for Driving Without a Valid License*

{18} Defendant also challenges the 364-day sentence for violation of driving without a valid driver's license, claiming the sentence is illegal because the maximum allowable imprisonment for the violation is 90 days. The State does not argue against Defendant's contention. After review of the record and the applicable law, we agree that the sentence is illegal and vacate the sentence.

{19} Defendant pleaded guilty to the charge of driving without a valid license under NMSA 1978, § 66–5–2(A) (1989). The offense is a misdemeanor, punishable by a fine of up to $300, or imprisonment for not more than 90 days, or both. *See* NMSA 1978, § 66–8–7 (1989). The trial court sentenced Defendant to the Quay County Detention Center for 364 days for the offense. This sentence is illegal and is void. *See Sneed v. Cox,* 74 N.M. 659, 661, 397 P.2d 308, 309 (1964) (per curiam) ("[S]entences which are unauthorized by law are null and void."). An unauthorized sentence may be corrected at any time. *See State v. Harris,* 101 N.M. 12, 14, 677 P.2d 625, 627 (Ct.App.1984). Accordingly, we vacate the district court's sentence of Defendant for the offense of driving without a valid license and remand for resentencing in accordance with Section 66–8–7.

*Conclusion*

{20} For the reasons stated above, we reverse the district court's denial of Defendant's motion to suppress. Accordingly, we remand for entry of an order suppressing the drug evidence and for further proceedings consistent with this opinion. We vacate the sentence of Defendant to 364 days of impris-

onment for driving without a valid license and remand for resentencing.

{21} **IT IS SO ORDERED.**

PICKARD and BOSSON, JJ., concur.