IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

   Plaintiff-Appellee,

v.                                                          No. 28,803

DONALD RAY PHARES,

   Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Thomas J. Hynes, District Judge

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Stephanie Erin Brunson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

   Defendant appeals his conviction for one count of second degree murder pursuant to a conditional plea. [DS 2] He challenges the district court's denial of his motions to suppress certain statements he made regarding his whereabouts on the day of his wife's death. [MIO 1] We proposed to affirm in our notice of proposed

summary disposition and, pursuant to five extensions, Defendant filed a timely memorandum in opposition. Remaining unpersuaded by Defendant's memorandum, we affirm.

In reviewing a district court's denial of a motion to suppress, factual determinations are subject to a substantial evidence standard of review, and the application of law to the facts is subject to de novo review. *State v. Nieto*, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442; *State v. Ingram*, 1998-NMCA-177, ¶ 5, 126 N.M. 426, 970 P.2d 1151. "As a general rule, we will indulge in all reasonable presumptions in support of the district court's ruling." *State v. Gonzales*, 1999-NMCA-027, ¶ 15, 126 N.M. 742, 975 P.2d 355.

**Defendant's Statements on October 13 and 14, 2007**

Defendant argues that the district court erred by failing to suppress his statements to the investigating officers prior to his formal arrest on October 16, 2007. [MIO 8-13; DS 6] He contends that his statements must be suppressed because he was subject to custodial interrogation, yet officers failed to apprize him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). [DS 6] *See Nieto*, 2000-NMSC-031, ¶ 20 ("A suspect's *Miranda* rights attach only when he is the subject of

a 'custodial interrogation.'" (citation omitted)). The district court's determination that Defendant was not in custody is a legal conclusion that we review de novo. *Id.* ¶ 19.

On October 13, 2007, Defendant called 911 to report that his wife was dead. [DS 3] Detective Tanner, along with other officers, responded and spoke with Defendant who had been moved to a neighbor's house. [MIO 3; DS 3, 6; tape log from May 20, 2008, hearing (located before RP 179) at 22, 26] Defendant states that Officer Frazier was sent to the neighbor's house and was instructed to prevent Defendant from washing his hands; he further states that Detective Lincoln actually performed the gun shot residue test on him. [MIO 3] Upon questioning by Detective Lincoln, Defendant admitted that he had been shooting a rifle earlier that day when he had gone for target shooting at a nearby arroyo. [MIO 3; DS 3] Detective Lincoln obtained Defendant's recollection of the day's events, how many times he had gone into the house, the path he used, and where he kept his firearms. [MIO 4]

The following morning, October 14, 2007, between approximately 4:00 and 5:00 a.m., the detectives again approached the neighbor's house to speak with Defendant. [RP 154; MIO 4] Detective Tanner had Defendant awakened to accompany him and Detective Lincoln to the arroyo where Defendant had allegedly been target shooting the day before. [5/20/08 hearing at 17-18, 27; RP 154; MIO 4]

3

Detective Tanner questioned Defendant in the car on the way to the arroyo and continued questioning as they searched the arroyo. [MIO 4] Defendant led the detectives to an area where they saw two recently dug holes in the sand that appeared to be shallow graves. [MIO 4; DS 3] After searching the arroyo, Detective Tanner returned Defendant to his neighbor's house and asked Defendant for consent to search his truck. [MIO 5] Detective Tanner later testified that Defendant gave inconsistent statements about his whereabouts on the day of the shooting. [DS 3]

In his memorandum in opposition, Defendant argues that he was interrogated by officers on October 13 and 14, 2007. [MIO 8-10] However, even though Defendant may have been interrogated by officers, we are unpersuaded that he was in custody at the time of the interrogation on October 13 and 14. [See MIO 10-13]

"A suspect is . . . considered in custody if a reasonable person would believe that he or she were not free to leave the scene." *State v. Munoz*, 1998-NMSC-048, ¶ 40, 126 N.M. 535, 972 P.2d 847. Custody is determined objectively and not from the subjective beliefs of the defendant and the questioning officer. *Nieto*, 2000-NMSC-031, ¶ 20. An individual is subjected to a custodial interrogation when he or she "is swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to the techniques of persuasion," causing the individual to feel

4

a compulsion to speak, in other words, when there was either a formal arrest or the suspect's freedom of movement was restrained to the degree associated with a formal arrest. *State v. Javier M.*, 2001-NMSC-030, ¶ 15, 131 N.M. 1, 33 P.3d 1; *see Munoz*, 1998-NMSC-048, ¶ 40 (stating that a suspect is considered in custody where the suspect's movement is restrained to a degree associated with formal arrest or where a reasonable person would believe that he or she were not free to leave the scene); *cf. State v. Cavanaugh*, 116 N.M. 826, 828, 867 P.2d 1208, 1210 (Ct. App. 1993) ("Interrogation occurs when an officer subjects an individual to questioning or circumstances which the officer knows or should know are reasonably likely to elicit incriminating responses.").

Defendant claims that his statements made October 13 and 14 should have been suppressed because no reasonable person in his situation could have felt that he had a right to leave the interrogation and thus he was in custody. [MIO 11] In support of his claim, he notes that he was isolated at his neighbor's house and not allowed to wash his hands. [Id.] He further notes that on October 14, he was again isolated with two detectives in a police vehicle and made to travel in the dark to an unlit location. [Id.] He concludes that no one in such a situation would have reasonably felt he was free to leave until allowed by the detectives to do so. [Id.] We are unpersuaded.

As previously stated, a suspect is only considered to be in custody "if a reasonable person would believe that he or she were not free to leave the scene." *State v. Bravo*, 2006-NMCA-019, ¶ 9, 139 N.M. 93, 128 P.3d 1070 (internal quotation marks and citation omitted); *see also Nieto*, 2000-NMSC-031, ¶ 20 (recognizing that law enforcement's obligation to read a suspect his *Miranda* rights arises only where a restriction has been placed on the suspect's freedom). In this case, according to the testimony of the detectives at the suppression hearing, Defendant was never prohibited from leaving his neighbor's home. [5/20/08 hearing at 21, 27] Law enforcement did not stand guard outside the house and did not instruct Defendant to remain at the house. [Id.] Moreover, Defendant voluntarily accompanied officers to the arroyo, and he then returned to his neighbor's home. In addition, Defendant has not disputed our observation that he only spoke with one or two officers at a time even though there were other officers investigating at his house and in the surrounding neighborhood. [5/20/08 hearing at 8, 12, 18] *Cf. Javier M.*, 2001-NMSC-030, ¶ 21 (holding that the child was not subject to custodial interrogation in part because even though there were numerous officers present, only one officer questioned the child directly and thus the child was not "overpowered by police presence" and his detention "was not overly 'police dominated' as is the case in custodial interrogation"). These factors lead us

6

to conclude that Defendant was not subject to a custodial interrogation. *See Nieto*, 2000-NMSC-031, ¶ 21 (concluding that the defendant was not in custody where he was asked and agreed to accompany officers to the station and was free to leave or terminate the interview); *Munoz*, 1998-NMSC-048, ¶ 43 (determining that the defendant was not in custody when he voluntarily agreed to police questioning and agents told him he did not have to accompany them, did not have to answer their questions or talk to them, would not be under arrest, and could leave at any time); *Bravo*, 2006-NMCA-019, ¶ 13 (affirming a finding that the defendant was not in custody in part because she returned home after the interview).

The fact that officers may have already targeted Defendant as a suspect and questioned him to obtain the necessary evidence to arrest him for murder does not lead us to question our conclusion. [MIO 12; DS 3, 6] *See Munoz*, 1998-NMSC-048, ¶¶ 42, 44. We are unaware of any cases supporting Defendant's contention that only investigatory questions of identity and routine matters are appropriate before an interrogation becomes custodial. [MIO 12] Defendant cites no authority in his memorandum in opposition to support this contention. [Id.] He cited to a few out-of-state cases when he advanced this argument to the district court, but those cases address the meaning of "interrogation"; it was undisputed that the suspects were in

7

custody at the time of questioning. [See RP 159-60] As Defendant has failed to cite to any cases supporting his contention, we assume it is without support. [MIO 12] *Cf. In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (recognizing that, when a party fails to cite to any authority in support of an argument, we may assume no such authority exists).

Finally, Defendant does not dispute our observation that there was no evidence or testimony indicating that Defendant ever expressed any reservation about speaking with the detectives or suggesting that Defendant was frightened by the detectives' attempts to speak with him. [RP 156-160; 5/20/08 hearing at 5-32; MIO 12-13] *Cf. Bravo*, 2006-NMCA-019, ¶¶ 12-13 (holding that the defendant was not in custody when she followed officers to the station and participated in an interview lasting approximately two hours, she was not placed in handcuffs, and she never told police she was tired). Therefore, we affirm the district court's conclusion that Defendant's statements to the detectives prior to his formal arrest did not constitute a custodial interrogation and therefore *Miranda* warnings were not required. [RP 181-82] *See State v. Wilson*, 2007-NMCA-111, ¶ 28, 142 N.M. 737, 169 P.3d 1184.

**Custodial Interrogation of Defendant on October 16, 2007**

Defendant contends that the district court erred in denying his motion to suppress all statements made after Defendant was read his *Miranda* rights because he never validly waived his rights and officers ignored his ambiguous requests for assistance of counsel. [MIO 13; DS 5] After being advised of his rights during his interrogation on October 16, 2007, Defendant questioned the detective as to whether he should get an attorney or whether he needed to get an attorney. [MIO 13; RP 114-26] Defendant contends that because he was asking whether he needed an attorney, he could not have voluntarily, knowingly, and intelligently waived his right to counsel. [MIO 13] We disagree.

Defendant voluntarily arrived at the sheriff's office, and Detective Hamlin advised him of his rights. [RP 114] Detective Hamlin then explained that Defendant did not have to speak with him if he did not want to and indicated that whether Defendant got an attorney was up to him. [RP 114-15] The record shows that after being apprized of his rights a second time, Defendant asked, "[s]hould I get an attorney?" [RP 115] The detective responded "[t]hat's totally up to you." [Id.] Later, Defendant again asked "[d]o I need to get an attorney?" and the detective responded "[t]hat's entirely up to you" and "I advised you of your rights, that's your

9

decision." [RP 119] After further questions and answers, Defendant asked "[d]o I need an attorney?" and the detective again responded "[t]hat's up to you." [RP 125] Defendant then said, "o.k, I need an attorney" and the detective asked him "[y]ou want an attorney?" [RP 125-26] Defendant then made additional comments indicating that he was confused and upset and finally stated "I want an attorney." [RP 126] At that point, all questioning ceased and Defendant was arrested [DS 6; RP 126] The district court found that up to the time Defendant expressly stated "I want an attorney," his statements did not require the detective to cease questioning him or to clarify whether he was requesting an attorney. [RP 148-49]

When responding to a defendant's motion to suppress statements allegedly made in violation of *Miranda*, "the [prosecution] bears the burden of demonstrating by a preponderance of the evidence that the defendant knowingly, intelligently, and voluntarily waived the constitutional right against self-incrimination." *State v. Martinez*, 1999-NMSC-018, ¶ 14, 127 N.M. 207, 979 P.2d 718. "[W]e review the trial court's findings of fact for substantial evidence and review de novo the ultimate determination of whether a defendant validly waived his or her *Miranda* rights prior to police questioning. In determining whether a waiver of rights is knowing, intelligent, and voluntary, we assess the totality of circumstances." *State v. Barrera,*

10

2001-NMSC-014, ¶ 23, 130 N.M. 227, 22 P.3d 1177 (citation omitted). Finally, once an accused invokes his or her right to counsel, he or she cannot be subject to any further interrogation until counsel has been made available unless the accused initiates further communication. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *see State v. Bailey*, 2008-NMCA-084, ¶ 9, 144 N.M. 279, 186 P.3d 908.

Defendant's questions regarding his need for an attorney are at most ambiguous or equivocal requests suggesting that Defendant might want an attorney. In addressing such an ambiguous request, the Supreme Court in *Davis v. United States*, 512 U.S. 452, 462 (1994), held that the Constitution did not prohibit "police questioning when the suspect *might* want a lawyer." Unless and until the suspect articulates a "desire to have counsel present [that is] sufficiently clear that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney," questioning may continue. *Id.* at 459.

Defendant's questions as to whether he needed an attorney do not explicitly assert that he wanted an attorney before he would answer further questions. [RP 115, 119, 125-26] Therefore, the detective did not violate Defendant's Fifth Amendment rights by continuing to interrogate him. *Id.* at 461 (declining to adopt a rule requiring officers to ask a clarifying question just because a suspect makes an ambiguous or

equivocal statement); *Barrera*, 2001-NMSC-014, ¶ 31 ("'If a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might be* invoking the right to counsel, our precedents do not require the cessation of questioning.'" (alteration omitted) (quoting *Davis*, 512 U.S. at 459)).

Defendant seeks to distinguish this case from the holding in *Davis* arguing that the detective did not hesitate in continuing to question him after he asked whether he needed an attorney, merely replying "That's entirely up to you," and he never clarified whether Defendant wanted an attorney. [MIO 14; RP 119] We are unpersuaded that the lack of clarifying questions by the detective violated Defendant's constitutional rights because merely seeking advice from the detective on whether he should get an attorney is not equivalent to a request for an attorney. *See Davis*, 512 U.S. at 461-62 (holding that questioning can continue unless the suspect "actually requests an attorney").

We also disagree that Defendant's questions regarding whether he should have an attorney indicated that he did not validly waive his rights. The record shows that Defendant was read his rights and, after Defendant indicated uncertainty, Detective Hamlin read him his rights for a second time. [RP 114-15] Detective Hamlin then

12

explained that Defendant did not have to speak with him if he did not want to and indicated that whether Defendant got an attorney was up to him. [RP 114-15] Defendant indicated that he understood his rights by replying "Okay." [RP 114] *Cf. State v. Fekete*, 120 N.M. 290, 301, 901 P.2d 708, 719 (1995) (holding that the defendant had voluntarily waived his *Miranda* rights and understood the meaning of his actions when the evidence showed that officers reviewed the waiver of rights form with the defendant, asked him to read each item in the form, and asked him whether he understood each item). After reading Defendant his rights and asking him whether he understood those rights, the detective was not required to do anything further, and Defendant's questions as to whether he needed an attorney did not call his understanding of his rights into doubt. *See Barrera,* 2001-NMSC-014, ¶¶ 30-31 (concluding that the defendant's question "[d]o I need an attorney?" was not a request for an attorney and that the defendant "did not sufficiently invoke his right to counsel" by asking that question and holding that "under the totality of the circumstances . . . the [prosecution] met its burden of demonstrating that [the d]efendant's waiver of rights was knowing and intelligent"); *Bravo*, 2006-NMCA-019, ¶¶ 15-17 (holding that the defendant's statement, "I can ask for an attorney here?" was ambiguous, and under the totality of circumstances, did not constitute an invocation of her right to counsel

given the facts showing that the *Miranda* waiver was provided to the defendant in her primary language of Spanish, she read the waiver out loud and stated that she understood it, and officers were not required to either clarify the defendant's request or cease questioning until counsel was present).

Based upon the foregoing, we affirm on this issue.

**NMSA 1978, Section 29-1-16 (2005)**

Defendant contends that the district court erred in denying his motion to suppress because officers failed to comply with the recording requirements set forth in Section 29-1-16.  [MIO 15-16; DS 5]  He raises this contention pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658-60, 712 P.2d 1, 4-6 (Ct. App. 1985).  [MIO 16]  We disagree with Defendant's contention.

Section 29-1-16(A) requires a state or local law enforcement officer to comply with certain recording procedures if "reasonably able to do so" when conducting a custodial interrogation.  If the interrogation is conducted in a police station, law enforcement must electronically record the interrogation in its entirety "by a method that includes audio or visual or both, if available," and it must "include the advice of constitutional rights required by law." Section 29-1-16(A)(2), (3).  The officer must

comply with Section 29-1-16(A) unless there is good cause not to and in that case, the officer must make "a contemporaneous written or electronic record of the reasons for not doing so." Section 29-1-16(B).

On October 16, 2007, when Defendant was taken to the San Juan County Sheriff's office for further questioning, the audiovisual equipment was not working, although the detective did not make a written or electronic record regarding the malfunctioning of the equipment. [MIO 15; DS 3-5; RP 97-98] Detective Tanner turned on his tape recorder and recorded most of the interrogation including the portion in which Defendant was read his *Miranda* rights. [DS 4-5; RP 98-99, 109, 114, tape log from April 2, 2008, hearing (located before RP 132) at 5] Detective Tanner did not record the portion of the interview leading up to the reading of Defendant's *Miranda* rights. [MIO 15; RP 114]

In our notice for proposed summary disposition, we proposed to hold that the audio recording of the interrogation was sufficient to comply with the requirements set forth in Section 29-1-16(A). *See* § 29-1-16(H)(2) (defining electronic recording to include a "complete and authentic electronic recording created by . . . audio tape"). We further noted that the statute explicitly states that its provisions should not be construed so as to exclude otherwise admissible evidence. *See* § 29-1-16(I) (stating

15

that Section 29-1-16 is not to be "construed to exclude otherwise admissible evidence in any judicial proceeding").

In his memorandum in opposition, Defendant contends that because functioning audiovisual equipment was available at a different location, law enforcement failed to comply with Section 29-1-16. [MIO 15-16] As discussed in our notice of proposed summary disposition, we are not convinced that the failure to make an audiovisual recording, even though there may have been audiovisual equipment at a different substation ten miles away [DS 5] violated Defendant's due process rights given that Detective Tanner recorded the interrogation on a working hand-held tape recorder. [DS 4; RP 98-99, 109, 114-126]

Given the clear language of Section 29-1-16(I) providing that this section should not be construed so as to exclude otherwise admissible evidence and given that there is no suggestion Defendant's statements were coerced or his rights otherwise violated before the audio recording commenced, we affirm the district court's decision to deny the motion to suppress based upon violation of Section 29-1-16. [RP 99-102, 114-126]   Therefore, we affirm on this issue.

For the foregoing reasons and those discussed in our notice of proposed summary disposition, we affirm the district court's denial of Defendant's motions to suppress.

**IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**TIMOTHY L. GARCIA, Judge**