This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                                          **NO. 32,038**

**JOSEPH BARNHILL,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Steven L. Bell, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Acting Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellee

# MEMORANDUM OPINION

**KENNEDY, Chief Judge.**

**{1}** The State appeals the district court's order granting Joseph Barnhill's (Defendant) motion to suppress evidence, pursuant to the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. *See* NMSA 1978, § 39-3-3(B)(2) (1972) (providing for appeals by the State "from a decision or order of a district court suppressing or excluding evidence"). The order appealed from states that Defendant was stopped "without [a] reasonable suspicion . . . that criminal activity was afoot." Having determined that Defendant was thus illegally seized, the district court's order then suppressed "[t]he evidence and statements subsequently obtained." The State appeals only the suppression of the recovered drugs. We do not address the determination that the seizure of Defendant was illegal.

**{2}** Based on the facts and arguments presented to the district court, we do not agree with the district court's determination that the physical evidence obtained following that illegal stop must be excluded at trial, since that evidence was not a product of the illegal seizure of Defendant. Accordingly, we reverse the portion of the suppression order excluding physical evidence recovered after Defendant was illegally seized and remand the case to the district court for further proceedings.

# I.    BACKGROUND

{3}    The district court made findings of fact and conclusions of law in its decision and order granting Defendant's motion to suppress.  On appeal, we view the facts found by the district court "in a light most favorable to the court's ruling." *State v. Ingram*, 1998-NMCA-177, ¶ 5, 126 N.M. 426, 970 P.2d 1151.  The district court's findings were as follows. Detective Kenneth Roberts was driving his unmarked police car northbound as he passed Defendant, who was walking southbound along the same street.  The detective then made a U-turn, drove past Defendant a second time, parked his car in a convenience store parking lot ahead of Defendant, and got out of his car to approach Defendant on foot.  While doing all of this, the detective observed Defendant take something from his pants pocket and throw it into a nearby dumpster.

{4}    As Detective Roberts approached Defendant on foot, the detective asked:  "Do you have any [identification]?"  Defendant responded by handing over his identification card.  The detective took and retained the identification card as he walked to the dumpster, looked inside, and saw a clear plastic baggie that contained a white crystalline substance.  The detective asked Defendant what he had thrown in the dumpster, and Defendant responded, "nothing."  The detective then ordered Defendant to stand beside a nearby building as he climbed inside the dumpster,

retrieved the baggie, and subsequently arrested him for possession of a controlled substance.

**{5}** Defendant filed a motion to suppress any statements made during his encounter with Detective Roberts, as well as the physical evidence recovered from the dumpster. The State filed a response to the motion, arguing that the detective's stop of Defendant was justified and, in any event, no search occurs where an officer witnesses "the defendant discard an object which [the officer] then recovers and finds to be a controlled substance." *See Trujillo v. United States*, 294 F.2d 583, 583-84 (10th Cir. 1961). Following a hearing on Defendant's motion, the district court concluded that (1) "Defendant was . . . seized at the point at which Detective Roberts asked for and obtained his identification card[,]" (2) "Detective Roberts did not have reasonable suspicion to believe that criminal activity was afoot" at that time, and (3) "evidence and statements subsequently obtained by Detective Roberts shall be suppressed." Thus, the suppression order at issue in this appeal covers both Defendant's statement that he did not throw anything in the dumpster and the baggie that the detective recovered from the dumpster. On appeal, however, the State challenges only the portion of that order excluding the plastic baggie.

**Standard of Review**

{6}      A district court's ruling on a motion to suppress involves mixed questions of fact and law. *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. In reviewing a suppression ruling, "the appropriate standard is whether the law was correctly applied to the facts, viewing them in a light most favorable to the court's ruling." *Ingram*, 1998-NMCA-177, ¶ 5. Although this standard requires deference to the district court's factual findings, its application of the law to those facts is reviewed de novo. *Id.*

## II.      DISCUSSION

{7}      Because Defendant argued below that his seizure was illegal under both the FourthAmendment and Article II, Section 10 of the New Mexico Constitution, we may apply the interstitial approach adopted in *State v. Gomez*, 1997-NMSC-006, ¶¶ 19-21, 122 N.M. 777, 932 P.2d 1. However, we note that Defendant did not argue any greater protection under the New Mexico Constitution, rendering interstitial analysis superfluous. *Id.* ¶ 23.

{8}      Having determined that Defendant was unreasonably seized for purposes of the Fourth Amendment, we turn to the question of whether evidence was obtained as a result of that improper seizure. *See Garcia*, 2009-NMSC-046, ¶ 47 (finding that evidence "flowed from the [illegal] seizure and must be suppressed under Article II,

Section 10"). The causal relationship between a defendant's illegal seizure and the evidence subsequently obtained must be examined because it is only evidence "obtained as a result of an unconstitutional search or seizure" that is suppressed pursuant to the exclusionary rule. *Ingram*, 1998-NMCA-177, ¶ 9; *see Segura v. United States*, 468 U.S. 796, 804 (1984) (requiring exclusion of both "evidence obtained as a direct result of an illegal search or seizure, [and] evidence later discovered and found to be derivative of an illegality" (citations omitted)).

**{9}** As the State framed this issue below, was there "any evidence that [Detective Roberts] obtained from talking with . . . Defendant that had anything to do with him then going over to the trash can and finding contraband?" On appeal, the State asserts this same argument, although with more emphasis upon the fact that Defendant's actions in throwing the baggie in the dumpster constituted an abandonment for Fourth Amendment purposes. Defendant complains that the State did not preserve the issue of abandonment by raising it before the district court. Defendant is mistaken.

**{10}** Throughout the proceedings below, the State argued that Detective Roberts did not violate Defendant's right to be free from unreasonable search or seizure and, even if he had done so, the baggie retrieved from the dumpster was not the result of any such violation. Therefore, it was Defendant's voluntary act of discarding the baggie that prevented its retrieval from becoming the fruit of an illegal search or seizure.

5

{11} The sole witness at the suppression hearing was Detective Roberts, who described the events leading up to Defendant's arrest. Commenting upon that testimony during argument, the State made clear its position that Defendant had abandoned the baggie in the dumpster.

> Detective Roberts said he saw him throw something in the dumpster and then walked away from it. . . . He's throwing something away. . . . It's not on his person anymore and it's not like he's standing next to the dumpster or holding onto it where it's on his person and [he is] exerting his expectation of privacy[1] over it. He is leaving it in a dumpster where the rest of the world can see it. . . . [A]n item is being left in a public place and that is where the officer recovers it from is from the public place.

This argument that the baggie was abandoned before Detective Roberts picked it up is essentially the argument asserted in the State's written response in opposition to Defendant's suppression motion, which relied upon *State v. Garcia*, 1966-NMSC-063, 76 N.M. 171, 413 P.2d 210, and *Trujillo*, 294 F.2d 583, for the proposition that no search or seizure occurs when a law enforcement officer witnesses someone "discard an object which [the officer] then recovers and finds to be a controlled substance."

{12} Here, the order appealed does not contain any findings regarding whether the baggie was abandoned in the dumpster, nor does it explicitly address whether that baggie was obtained by Detective Roberts "as a result of an unconstitutional search

---

[1]*See State v. Esguerra*, 1991-NMCA-147, ¶ 13, 113 N.M. 310, 825 P.2d 243 (noting that "[w]hen an individual's behavior indicates an intent to abandon his possessions, he is divested of any expectation of privacy").

or seizure." *See Ingram*, 1998-NMCA-177, ¶ 9. Nonetheless, our review of the record below convinces us that the State fairly invoked a ruling on both of those questions and that the issues here addressed are preserved for our review. *See State v. Balderama*, 2004-NMSC-008, ¶ 19, 135 N.M. 329, 88 P.3d 845 (noting that the preservation rule "disregards form and relies upon substance, and merely requires that a question be fairly presented to the court and a ruling invoked" (internal quotation marks and citation omitted)).

{13} Defendant also argues that, because the State did not raise the issue of abandonment, he was denied the opportunity to develop facts that would have established either that he was somehow stopped prior to discarding the baggie, or he was merely hiding the baggie in the dumpster and did not intend to abandon it. As noted above, however, the State did properly raise the issue of abandonment before the district court. The State's arguments that Defendant was "throwing something away," he was "giving it up," and, particularly, he was not "exerting his expectation of privacy over it" drove home the State's theory that Defendant abandoned the baggie in the dumpster prior to being stopped by Detective Roberts. Thus, Defendant had every motivation to establish that he was stopped for search and seizure purposes prior to the detective asking for his identification.

**{14}** Similarly, nothing prevented Defendant from arguing to the district court that he intended to retrieve the clear plastic baggie at some point in the future and thus was not abandoning it. As the State pointed out during the suppression hearing, however, at the time Detective Roberts found the baggie, Defendant was "leaving it in a dumpster where the rest of the world [could] see it." In short, when Defendant discarded a clear plastic baggie in a public place with its contents exposed, he did not demonstrate any reasonable expectation of privacy in the contents of that baggie. *Cf. State v. Granville*, 2006-NMCA-098, ¶ 31, 140 N.M. 345, 142 P.3d 933 (recognizing reasonable expectation of privacy in "garbage that is contained in an opaque plastic bag").

**{15}** Turning to the substance of the State's argument, we begin with the chronology of events leading up to Defendant's arrest. "[I]f [the d]efendant was not seized at the time he discarded the contraband, then the evidence would be considered abandoned and Fourth Amendment protections would not apply." *State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30. In this case, there is no dispute as to the sequence of events leading up to Defendant's arrest. Defendant does not contest the testimony that Detective Roberts saw Defendant throw something into a dumpster before he spoke to Defendant. There is, similarly, no dispute that the detective then

obtained Defendant's identification card before walking over to the dumpster and discovering the baggie inside.

{16}     This chronology, in which a defendant discards an item prior to an improper search or seizure, followed by the recovery of the discarded item by law enforcement, is strikingly similar to the facts of *Esguerra*. In *Esguerra*, the defendant left a knapsack in a hotel parking lot, apparently while fleeing from police officers who were knocking on the door of his hotel room. 1991-NMCA-147, ¶ 15. The police then conducted a warrantless search of the hotel room before discovering the knapsack in the parking lot. *Id*. Prior to trial, the defendant sought to suppress the contents of the knapsack, arguing that "the police pursuit which forced him to flee and leave his knapsack behind was conducted without a search warrant for his hotel room, thereby coating the evidence with the taint of the illegal entry into the hotel room." *Id*.

{17}     In rejecting that argument, this Court relied upon *Garcia*, 1966-NMSC-063, ¶ 10, which, in turn, quoted *Trujillo* for the following proposition:

> It is not a search to observe that which occurs openly in a public place and which is fully disclosed to visual observation. There was no seizure in disregard of any lawful right when the officers retrieved and examined [contraband] which had been dropped in a public place. As the evidence was obtained prior to and independent of arrest, the arguments of counsel as to the legality of the arrest merit no consideration.

*Trujillo*, 294 F.2d at 583-84 (footnotes omitted).

9

{18} Although, in *Trujillo*, the contraband was retrieved by police officers prior to any improper conduct. In *Esguerra*, the contraband was not discovered until after officers had conducted an illegal search of the defendant's hotel room. *Compare Trujillo*, 294 F.2d at 583 (explaining how the defendant dropped contraband prior to contact with police), *with Esguerra*, 1991-NMCA-147, ¶¶ 4-5 (describing the discovery of knapsack containing bundles of cocaine after illegal search of hotel room). That distinction, however, was, and is, immaterial, as it is the timing of a defendant's actions in discarding his property and not the timing of the police recovery of that property that determines whether or not the subsequently discovered evidence was a product of illegal police conduct.

{19} This Court later highlighted the significance of a defendant's actions in discarding incriminating property prior to any challenged police conduct in *Ingram*, which discussed the facts of *Esguerra*, specifically noting that, "[s]*ince the abandonment took place prior to the allegedly illegal police activity*, the defendant could not demonstrate the necessary causal relationship between the illegal search and the discard of the property to be entitled to the protections of the Fourth Amendment against an unreasonable search." *Ingram*, 1998-NMCA-177, ¶ 11 (emphasis added). Further, lest there be any doubt as to the significance of the fact that a defendant discards evidence prior to any challenged police conduct, we also noted that, "[o]n

10

closer inspection of *Garcia*, . . . we note that in *Garcia*, the abandonment took place prior to any illegal police search." *Ingram*, 1998-NMCA-177, ¶ 12.

{20}     Because we agree with the district court's determination in this case that Defendant was seized "at the point at which Detective Roberts asked for and obtained his identification card[,]" we must conclude that the baggie in the dumpster was abandoned just as in *Esguerra* and *Garcia* prior to any police misconduct. *See Harbison*, 2007-NMSC-016, ¶ 10 (noting that "if [the d]efendant was not seized at the time he discarded the contraband, then the evidence would be considered abandoned and Fourth Amendment protections would not apply"). As a result, there was no causal relationship between the illegal seizure and Detective Roberts' recovery of the baggie from the dumpster. We therefore conclude that the detective did not obtain the baggie as a result of his illegal seizure of Defendant, and the baggie and its contents should not have been suppressed as the fruit of an improper search or seizure.

{21}     Finally, invoking the right-for-any-reason doctrine, Defendant invites this Court to set aside the district court's findings and affirm the suppression of physical evidence in this case based upon a determination that he was somehow seized prior to Detective Roberts asking for his identification. Such a determination, however, would be contrary to the uncontradicted evidence that Defendant discarded the plastic baggie prior to any actual contact with the detective. And, more importantly, such an

approach would be contrary to the district court's explicit finding that "Defendant was in fact seized at the point at which Detective Roberts asked for and obtained his identification card." We decline Defendant's invitation to rewrite the record in that fashion.

**III.    CONCLUSION**

{22}    Accordingly, because Defendant abandoned the baggie prior to his seizure and had no reasonable expectation of privacy in its contents, the portion of the district court's suppression order excluding physical evidence retrieved from the dumpster is reversed, and the case is remanded for further proceedings consistent with this Opinion.

{23}    **IT IS SO ORDERED.**


_____
**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Judge**


_____
**LINDA M. VANZI, Judge**