This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                          NO. 33,685

**MICHAEL LUCERO**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Anne Kelley, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Chief Judge.**

{1} The United States Constitution permits a *Terry* frisk or pat down for weapons where a police officer has an objective reason to believe that he is dealing with an armed and dangerous individual. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The primary issue in this case is whether the *Terry* frisk of Defendant was permissible under the circumstances. We conclude it was and affirm the district court order denying Defendant's motion to suppress. We also reject Defendant's remaining arguments.

**BACKGROUND**

{2} Defendant was indicted on one count of trafficking methamphetamine (by possession with intent to distribute), one count of conspiracy to do so, and one count of possession of drug paraphernalia. NMSA 1978, §§ 30-31-20(A)(3) (2006); 30-28-2 (1979); 30-31-25.1(A) (2001). Defendant filed a motion to suppress, arguing that the pat down of his body which resulted in the discovery of methamphetamine and a glass pipe used to smoke methamphetamine was unconstitutional. The State responded, and the district court held an evidentiary hearing on the motion where the following facts were established.

{3} Just before 3:30 a.m., on December 8, 2010, Deputy Hessinger of the Bernalillo County Sheriff's Department conducted a traffic stop of Defendant because the registration of his Ford Ranger pickup was expired. The pickup was occupied by two persons, and while making contact with Defendant, Deputy Hessinger looked inside

and saw some small empty plastic baggies, about one inch by one inch, between Defendant and the passenger on the floorboard. Deputy Hessinger obtained identification from Defendant and the passenger, whom he subsequently learned was Defendant's adult son. He returned to his police vehicle, where he ran a check and learned that the passenger had an outstanding warrant for his arrest. Another Deputy arrived and Deputy Hessinger asked him to provide backup. Deputy Hessinger then went to the passenger side of the pickup and asked the passenger to step out. The passenger complied and after frisking him for weapons, Deputy Hessinger handcuffed him and placed him into custody on the warrant.

{4}     As the passenger was getting out of the truck, Deputy Hessinger saw a larger plastic baggie in the passenger door pouch. Based on his training, Deputy Hessinger believed this larger bag contained methamphetamine in an amount that was more than for personal use, and that the smaller baggies on the floorboard were for distributing methamphetamine. Deputy Hessinger therefore asked Defendant to get out of the pickup and placed him in "investigative detention" to complete his investigation. Defendant complied, and for his safety Deputy Hessinger frisked Defendant to determine if he had any weapons for his safety.

{5}     Deputy Hessinger testified that he suspected drug trafficking was involved, and that in his experience, individuals involved in drug trafficking often carry guns. In this

case, the fact that he suspected the presence of methamphetamine did not "necessarily" make him want to do a frisk. "Even if there weren't narcotics and I was taking them out of [the] vehicle to speak with me, I would have conducted a *Terry* pat down." Deputy Hessinger explained that on a traffic stop, if he asks a person to exit the vehicle, he always frisks the person for his safety.

{6} As he began frisking Defendant, Deputy Hessinger asked Defendant if he had anything on him, and Defendant said he had a small baggy of "meth" in his pocket. Upon frisking Defendant, Deputy Hessinger felt the baggie and a pipe in Defendant's shirt pocket, which he removed. Seeing that the baggie contained a substance he believed to be methamphetamine, and that the pipe was a clear glass pipe used for smoking methamphetamine, Deputy Hessinger arrested Defendant.

{7} Deputy Hessinger testified that Defendant and the passenger were cooperative, compliant, there was nothing unusual or suspicious about their behavior, and that they were not threatening in any way during the entire encounter. In fact, Deputy Hessinger identified nothing specific or particular to Defendant that caused Deputy Hessinger to pat down Defendant. The basis for the pat down was his practice of patting down anyone he asks to exit a vehicle.

{8} The district court denied Defendant's motion to suppress, concluding that the pat down was proper based on the facts and circumstances that: it was three o'clock

4

in the morning; it was dark; Defendant's son was a passenger and he had a warrant that he was being arrested on; there were drugs on the passenger side of the pickup truck; Deputy Hessinger had no idea who the drugs belonged to; Defendant had custody and control of the pickup truck he was driving; and Deputy Hessinger was at risk after he ordered Defendant out of the pickup truck.

{9}     The jury found Defendant guilty of simple possession of methamphetamine and possession of drug paraphernalia, and acquitted Defendant of drug trafficking and conspiracy. Defendant appeals.

**DISCUSSION**

**A.     The *Terry* Pat Down Search**

{10}     Warrantless searches are presumed to be unconstitutional under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. *See State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 ("Any warrantless search analysis must start with the bedrock principle of both federal and state constitutional jurisprudence that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable, subject only to well-delineated exceptions." (emphasis, internal

quotation marks, and citation omitted). The State has the burden to prove facts that justify a warrantless search. *State v. Paul T.*, 1999-NMSC-037, ¶ 10, 128 N.M. 360, 993 P.2d 74.

{11}     One well-known exception to the warrant requirement is a *Terry* protective frisk for weapons "to ensure that the individual is not armed." *State v. Ingram*, 1998-NMCA-177, ¶ 6, 126 N.M. 426, 970 P.2d 1151. The purpose of this search is to "allow the officer to conduct an investigation without fear of violence." *Id.* The search is limited to patting the outer clothes of the suspect to find concealed objects that could be used as weapons. *Paul T.*, 1999-NMSC-037, ¶ 17. To justify a *Terry* frisk for weapons, "an officer must have a sufficient degree of articulable suspicion that the person being frisked is both armed and presently dangerous." *Vandenberg*, 2003-NMSC-030, ¶ 22 (emphasis omitted). *See Terry*, 392 U.S. 1 at 10. In evaluating whether a frisk is valid, we "balance the threat posed to officer safety under the circumstances, against the individual's right to personal security free from arbitrary inference by law officers." *Vandenberg*, 2003-NMSC-030, ¶ 23 (internal quotation marks and citation omitted).

**Standard of Review**

{12}     Our review of a district court ruling on a motion to suppress involves a mixed question of fact and law. *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566,

81 P.3d 19. "[W]e review [factual questions] for substantial evidence; [and legal questions] de novo. *Id.* As to the facts, we view them "in a light most favorable to the prevailing party, as long as the facts are supported by substantial evidence. *Id.* ¶ 18. However, in determining whether those facts establish the police officer's conduct was reasonable, and therefore constitutional, we are deciding a legal question, and our review is de novo. *Id.* ¶ 19.

**Analysis**

{13}   Defendant's argument focuses on the fact that Deputy Hessinger never expressed a subjective fear that Defendant was armed and dangerous, or that he feared for his safety as justification for the frisk. Defendant argues that Deputy Hessinger's testimony establishes that the only reason for Defendant's pat down is his testimony that he frisks anyone he orders out of their vehicle, and this alone is not sufficient justification for a frisk. Defendant's argument would have us overlook all the remaining facts and context in which the pat down took place. In contrast, the State argues that the test to determine whether a frisk is valid is an objective test, and that Deputy Hessinger's "subjective intention" for conducting the frisk is irrelevant. Focusing on what it contends are the "objective facts" the State contends that independent of Deputy Hessinger's subjective state of mind, the frisk was proper. We find this argument to be consistent with our precedent and more persuasive.

7

**{14}** We have previously said that "the officers' subjective belief is not the test" for determining whether a protective frisk is permissible because "[i]f the test were subjective, any officer could avoid the constitutional requirement of reasonableness and have unfettered leeway to perform a [protective frisk], simply by testifying that he feared for his safety." *State v. Pierce*, 2003-NMCA-117, ¶ 15, 134 N.M. 388, 77 P.3d 292. An objective test, rather than a police officer's subjective belief, determines whether a protective frisk is reasonable, and therefore, permissible. *Vandenberg*, 2003-NMSC-030, ¶ 23. "The objective standard applied is whether a reasonable, well-trained officer would fear for his or her safety based on the belief that the suspect may be armed and dangerous." *Talley*, 2008-NMCA-148, ¶ 19.

**{15}** We now turn to whether the objective standard for a protective frisk was satisfied under the facts of this case. As required under our standard of review, we view the facts and inferences from the facts in the light most favorable to the district court order denying Defendant's motion to suppress. The time of the stop in the early morning hour, just before 3:30 a.m., is one factor to be added to the inherent danger which accompanies all traffic stops. The adult passenger was then determined to be Defendant's son, and he had an outstanding warrant for his arrest. In the course of arresting Defendant's son, Deputy Hessinger saw a plastic bag which he believed contained methamphetamine in a quantity consistent with drug trafficking. This bag,

8

coupled with this observation of small plastic baggies on the floorboard led Deputy Hessinger to believe that trafficking of methamphetamine was in progress. These facts, along with his training that drug traffickers often carry guns, justified Deputy Hessinger's conclusion, as a reasonably well-trained officer, that a pat down of Defendant was necessary to insure his personal safety when he asked Defendant to exit the pickup. *See Vandenberg*, 2003-NMSC-030, ¶ 22 (stating that we must determine whether "a reasonable, well-trained officer" would have made the same decision, and that if reasonable minds differ on this issue, we defer to the officer's good judgment).

{16} In arriving at the foregoing conclusion, we disagree with the State that *State v. Eskridge*, 1997-NMCA-106, 124 N.M. 227, 947 P.2d 502 is dispositive. In *Eskridge*, we determined that the facts supported a reasonable conclusion by the officers that a "possible large drug transaction" was involved. 2003-NMCA- 106, ¶ 26. As such, the crime was an inherently dangerous type of crime which allows for a frisk. *Id*. This is consistent with *State v. Cobbs*, 1985-NMCA-105, ¶ 34, 103 N.M. 623, 711 P.2d 900 in which we recognized that a *Terry* frisk for weapons is permitted when the officer has a reasonable suspicion that an individual has committed, was committing, or was about to commit a crime for which he would likely be armed. We said such inherently dangerous crimes include "robbery, rape, assault with weapons, and dealing in large

9

narcotics transactions." *Id.* ¶ 35. Here, the facts support an inference that Defendant was involved in trafficking, but there is no evidence that a "large" drug transaction was involved. There is, however, evidence of drug trafficking in methamphetamine, which experience informs possibly, involving guns, and which, combined with the other facts we have already described, gave rise to a reasonable belief on Deputy Hessinger's part that a pat down for possible weapons was appropriate.

{17}    For the foregoing reasons, we affirm the order of the district court denying Defendant's motion to suppress.

**B.    Remaining Issues**

{18}    Defendant also argues that the charges should have been dismissed because Deputy Hessinger combined the contents of the 2 baggies into one, and that it was error to give an instruction on simple possession as a lesser included offense.

{19}    At the suppression hearing, Deputy Hessinger testified the baggie in Defendant's shirt weighed 1.1 grams, and that the baggie in the door weighed 5.8 grams. He said he weighed each baggie, then combined their contents into a single baggie. There is no allegation that Deputy Hessinger acted with bad faith in combining the two baggies. However, Defendant contends that the baggy seized from his shirt pocket was "lost", and that the district court erred in admitting evidence of this alleged methamphetamine into evidence. A district court's ruling on remedies

10

sought for the loss or destruction of evidence is reviewed for an abuse of discretion. *State v. Pacheco*, 2008-NMCA-131, ¶ 27, 145 N.M. 40, 193 P.3d 587.

{20} Defendant was convicted of possession of methamphetamine. When Deputy Hessinger started frisking Defendant and asked Defendant if he had anything on him, Defendant responded that he had a small baggy of "meth" in his pocket. Defendant's admission alone is sufficient to prove he knowingly had methamphetamine in his possession. *See State v. Phillips*, 2000-NMCA-028, ¶ 12, 128 N.M. 777, 999 P.2d 421 (noting that the defendant admitted knowing of the drug paraphernalia discovered in a dresser drawer and conceding to using drugs in the past). Moreover, Defendant does not contest that the larger bag had methamphetamine. Thus, Defendant has failed to establish prejudice or materiality owing to the "loss" of the contents of the small baggie in his shirt pocket. *See State v. Chouinard,* 1981-NMSC-096, ¶ 16, 96 N.M. 658, 634 N.M. 680 (setting forth a three-part test for imposing sanctions when evidence is lost, destroyed, or not preserved which includes materiality of the evidence and prejudice to the defendant); *State v. Ferro*, 1988-NMSC-053, ¶ 10, 107 N.M. 369, 758 P.2d 783 (stating that evidence is material if there is a reasonable probability that the result of the trial would have been different if it had been disclosed). We conclude the district court did not abuse its discretion, and that there was no error in not striking the evidence from the jury's consideration.

{21} Defendant also contends, pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, that the district court erred in instructing the jury on simple possession of methamphetamine as a lesser-included offense to the charge of trafficking methamphetamine (by possession with intent to distribute). We agree with the State that the instruction was appropriate under *State v. Meadors*, 1995-NMSC-073, ¶ 12, 121 N.M. 38, 908 P.2d 731 (setting forth test on whether an instruction on a lesser included instruction is appropriate).

**CONCLUSION**

{22} The judgment and sentence of the district court is affirmed.

{23} **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**J. MILES HANISEE, Judge**